IN RE, REPORT OF THE RAILROAD COMMISSIONERS ON THE RAILROAD CROSSING IN THE TOWN OF OLD ORCHARD, AT TEMPLE AVENUE.

York.     Opinion December 27, 1897.

*Way. Easement. R. R. Crossing. R. S., c. 18, §§ 27, 36.*

If a highway is located along and over a prescriptive way, the public easement in the prescriptive way becomes merged in the public easement in the highway.

The prescriptive way is extinguished by the location of the highway; and if the highway is afterwards discontinued, the easement of the public in the prescriptive way is not thereby revived or restored.

And this is true, although the town within which the highway was located never took possession of the land to build or repair the way, and failed for six years to open the highway.

Where the presiding justice accordingly ruled, as a matter of law, that the public had lost its right of crossing the track of the Boston & Maine railroad company at the place where the Old Salt-road, so-called, formerly was, and where the highway was laid out by the county commissioners, and discontinued in 1894; and it appeared that the Old Salt-road was a public way established by adverse use for over twenty years; and it also appeared that the highway which was located, and afterwards discontinued, was laid out substantially along and over the Old Salt-road, *held;* that the ruling was correct.

ON EXCEPTIONS BY BOSTON AND MAINE RAILROAD COMPANY, AND BY SILAS W. MILLIKEN AND FRANK W. NUTTER, REMONSTRANTS.

The case is stated in the opinion.

*Geo. F. and Leroy Haley*, for petitioners.

*J. W. Symonds, D. W. Snow and C. S. Cook*, for B. & M. Railroad.

So long as there is either a public or private crossing at Old Salt-road, the decision of the railroad commissioners as to the crossing at Temple Avenue has no effect; and no permission was

granted by them to cross at grade so long as the Old Salt-road exists as a public or private way.

What the railroad seeks to avoid, in this proceeding, is a serious danger to itself and to the public arising from two grade crossings within fifteen hundred feet of each other in a densely crowded place filled with a summer population at a sea side resort. The ruling may have the effect to establish these two grade crossings contrary to the intention of the railroad commissioners.

*H. Fairfield and L. R. Moore,* for other remonstrants.

The inequity of this matter is this : Here was a road which the land owners and dwellers had a right to use. It had not been located by town or county officers; therefore it could not be discontinued by either, nor could it be closed by the Boston & Maine Railroad. It gave all interested a way to travel. It was valuable to those living on the road and to those owning land thereon suitable for development.

A highway is located in its general line, and then is discontinued. The public and land owners continue the use of the old road, when suddenly appears this ruling of the court declaring that there is no road there. The land owner asks where his old road is, which no one had power to discontinue. He is answered that it merged into the highway. But where is the highway? Oh, that has been discontinued. Well, how am I to get to my house says A. There is no answer. The new road, a quarter of a mile away, furnishes no access. He has none. He has lost his old way and has none in its place. That's the inequity of this proceeding.

SITTING: PETERS, C. J., FOSTER, HASKELL, STROUT, SAVAGE, JJ.

SAVAGE, J. From the admissions and testimony in this case, it appears that there existed in the town of Old Orchard, prior to the construction of the Boston & Maine Railroad in 1872, a way known as the "Old Salt-road." It is admitted that this way was then "a public way established by adverse use for over twenty years, twenty-five feet wide." This way was crossed by the Bos-

ton & Maine Railroad, and the railroad company "planked between and outside the rails, built and graded the approaches, and have maintained them ever since at the crossing of the railroad and the Salt-road." This crossing has been traveled by the public ever since the construction of the railroad the same as the old road had been traveled before. But the railroad commissioners have never fixed the manner and conditions of this crossing.

The county commissioners, by due proceedings which were closed in 1887, located a highway "over the general line of the Salt-road." It is admitted that "no portion of the old public way known as the Salt-road was outside of the limits of the highway as laid out by the commissioners in 1887, at the railroad crossing, but while the highway was laid out substantially over the public way known as the Salt-road, there were some places where the Salt-road in its windings was outside of the limits of the highway as laid out."

By due proceedings which were closed in 1894, the county commissioners discontinued the highway laid out by them in 1887, and located a new highway crossing the Boston & Maine Railroad at Temple Avenue, fourteen hundred and sixty-five feet from the Old Salt-road crossing.

The selectmen of Old Orchard petitioned the railroad commissioners to determine the manner and conditions of crossing the railroad track at Temple Avenue in the new highway, under the provisions of R. S., chap. 18, § 27, as amended. The railroad commissioners, it seems, were in doubt whether there is now a legal crossing at the Old Salt-road, but intimated that if such is the fact they would be unwilling to allow another crossing so near it. They assumed, however, that by the discontinuance of the old highway in 1894, there is "no legal crossing of the Boston & Maine railroad by the highway at what is known as the 'Old Salt-road'," and they "decided to grant the prayer of the petition, and report the matter to the court."

At the hearing upon the acceptance of this report of the railroad commissioners, it appeared also that the town of Old Orchard never opened or constructed the highway located in 1887; that the town

resisted all efforts to compel it to do so; that the owners of land adjoining did build or repair some portions of it; that the prescriptive way was passable at the time the highway was located over it, and that the public continued to travel upon it down to the time of the hearing, the same as it had done before the highway was located. Thereupon, the presiding justice ruled "as a matter of law, that the public has lost its right of crossing the track of the Boston & Maine Railroad Company at the place where the Old Salt-road, so-called, formerly was, and where the highway was laid out by the county commissioners and discontinued in 1894," and therefore accepted the report of the railroad commissioners.

The correctness of this ruling is the only question presented by the exceptions. We think the ruling was correct. The highway was located along the general line of the prescriptive way, and at the railroad crossing, which is the point in question, the latter way was entirely within the location. Along the prescriptive way the public had an indisputable right to travel; the public had the same right, no more, no less, in the highway. Can the public have two equivalent but separate and distinct rights of travel over the same land at the same time? We think not. The public easement in the' prescriptive way was merged in the public easement in the highway. The prescriptive way was extinguished by the location of the highway. *Hancock* v. *Wentworth*, 5 Met. 446. See also *Chadwick* v. *McCausland*, 47 Maine, 342. Counsel in support of the exceptions denies the authority of *Hancock* v. *Wentworth*, supra, for the reason that the town of Old Orchard never opened or built the located highway, while in the case of *Hancock* v. *Wentworth* the way was opened and built. It is contended that the new location could not extinguish the old easement until the town took possession to build or repair, and that if the town failed for six years to open that highway, it would be discontinued by virtue of the statute, R. S., chap. 18, § 36; and that the original easement would remain in the public. In other words, it is claimed that the location would not take effect so as to extinguish the easement in the prescriptive way until the way was opened and built. We think otherwise. The location of a highway is a

definite judicial act. It is made a matter of record. The time of location is certain. The rights of the public and the duties of the town become fixed from that time. The precise time of opening and building a way is, within certain limits, a matter of municipal convenience and discretion. The opening and building adds nothing to the legal effect of the location. It is true that the payment of land damages is postponed until the land "has been entered upon and possession taken for the purpose of construction or use." But this does not control the legal effect of the location. Until possession is taken by the town, the land owner is not disturbed in the beneficial use of his property. The statute does not give the town any option about building. It is presumed that a highway duly located will be opened and built. So far as concerns the question under consideration, the way became a highway at the time of its location. It had a legal existence from that time. The location, ex proprio vigore, extinguished the prior easement. *Ballard* v. *Butler*, 30 Maine, 94; *Mussey* v. *Union Wharf*, 41 Maine, 34. Were the rule otherwise, it may well be questioned whether, in a case like this, where the way is actually open and passable, and is used by the public for the purposes of travel at the time of location, any formal technical act of opening is necessary. *Heald* v. *Moore*, 79 Maine, 271.

It is contended that the result at which we have arrived works a hardship upon the public as well as upon the owners of the land adjoining the prescriptive way; that whereas before the various proceedings of the county commissioners, both the public and the land owners had certain rights in the old way, now they have none, in either the old or the new. Very true. But it is to be presumed that those who were injured in their property by either the location or discontinuance of the highway have received damages therefor. *Heald* v. *Moore*, supra. And the public, by which, in its organized capacity, the highway was first located and then discontinued, will be supposed to be content with such avenues for travel as its own tribunals have afforded.

It is the opinion of the court that the exceptions should be overruled.

*Exceptions overruled.*