(151 App. Div. 309.)

TAMNEY v. ATKINS et al.

(Supreme Court, Appellate Division, Third Department.   May 8, 1912.)

1. MANDAMUS (§ 143*)—CONTESTS—REVIEW BY COURTS—TIME OF APPLYING FOR RELIEF "WITHIN TWENTY DAYS."

Election Law (Consol. Laws 1909, c. 17) § 381, provides that, if any certified original statement of the result of the canvass in an election district show that any of the ballots were rejected by the inspectors as void, a mandamus may, upon the application of any candidate voted for at such election, within 20 days thereafter issue out of the Supreme Court and the inspectors, requiring the recount of such ballots. *Held,* that the words "within twenty days thereafter" refer to the. application of mandamus, and not to the actual issuance of the writ within that time after the election, so that it was sufficient if the application was made within that time.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 282–285; Dec. Dig. § 143.*

For other definitions, see Words and Phrases, vol. 8, pp. 7497–7502.]

2. MANDAMUS (§ 172*)—ELECTION CONTESTS—RECOUNT OF REJECTED BALLOTS.

Election Law (Consol. Laws 1909, c. 17) § 381, provides that, if any certified original statement of the result of a canvass show that any ballots counted at an election were protested as marked for identification, mandamus may issue upon the application of any candidate and the election inspectors requiring a recount. Liquor Tax Law (Consol. Laws 1909, c. 34) § 13, authorizes town electors to vote upon four propositions with reference to the sale of liquor by hotel keepers under saloon licenses, etc. Election Law, § 316, provides that, if proposed constitutional amendments or other questions may be properly voted upon at the election, there shall be separate ballot boxes for the reception of ballots upon such amendments or questions marked, "Box for questions submitted." Section 332 requires the ballots provided for voting upon such question to comply with the requirements of the official ballot for candidates so far as applicable, and section 420 provides that the word "ballot" includes votes cast on questions submitted to voters upon which they may vote "yes" or "no," and section 373 requires a similar return to be made upon ballots voted upon in a proposition or question to that made upon votes for candidates. *Held* that, under section 381, the court had jurisdiction to inquire whether rejected ballots voted upon the proposition whether intoxicants should be permitted to be sold at hotels were void, as well as the validity of ballots voted for candidates for office.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 381–385; Dec. Dig. § 172.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

136 N.Y.S.—55

**3. INTOXICATING LIQUORS (§ 34*)—LOCAL OPTION ELECTION—BALLOTS—VALIDITY—INVALID IN PART.**

At a local option election four propositions were submitted on the ballot, namely, the sale of liquor to be drunk on the premises, its sale not to be drunk on the premises, its sale by physician's prescription, and the sale by hotel keepers. Each proposition was separated by a heavy black line, and in front of each and under each there were the words "yes" and "no," and opposite each word was a square within which the voter's cross-mark was required to be made, so that, if properly voted, the ballot would only contain four cross-marks. Certain ballots were voted both the "yes" and "no" upon the first proposition, and also on the second and third propositions, but on the fourth proposition all of the ballots were properly voted. Three of the cross-marks were opposite "yes" and one opposite "no." Election Law (Consol. Laws 1909, c. 17) § 358, rule 6, requires the voter to make a cross-mark in the blank space after the words "yes" or "no," and section 368, rule 2, provides that where a voting mark is made in a circle above a ticket, and also in the voting squares before the names of candidates, the marks in the squares shall be regarded as surplusage, and the vote counted as though no mark appeared, except in the circle, and rule 6 provides that, where a mark is made in more than one circle, the vote shall be counted for those candidates against whom no candidate is named on the other ticket, and rule 7 provides that, subject to such rules, if the voter marks more names than there are persons to be elected, or if for any other reason it is impossible to determine his choice of a candidate, his vote shall not be counted for such office. *Held,* that the improper marking of the ballots on the first, second, and third propositions did not render them void as to the fourth proposition.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 42; Dec. Dig. § 34.*]

**4. ELECTIONS (§ 194*)—BALLOTS—ERASURES—MARKS.**

Marks outside of the voting spaces, erasures, etc., invalidate a ballot.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 166, 167; Dec. Dig. § 194.*]

Appeal from Special Term, Ulster County.

In the matter of application of Warren C. Tamney for a writ of mandamus against William H. Atkins and others, constituting the Town Board and Inspectors of Election of the town of New Paltz, Ulster county, N. Y., Eugene Van Wagenen, and others. From an order granting the application, Van Wagenen and others appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

John J. Linson, for appellants.
A. H. Van Buren, for respondent.

HOUGHTON, J. At the general town meeting of 1911 the electors of the town of New Paltz, Ulster county, upon a proper petition, voted upon the four propositions with respect to the sale of liquor in that town, as permitted by section 13 of the Liquor Tax Law (Consol. Laws 1909, c. 34). The town contains two election districts, and the inspectors of election in each of the districts determined that certain of the ballots were void, and refused to count them upon any of the propositions submitted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The vote upon the first two propositions relating to saloon licenses and to the sale of liquor not to be drunk upon the premises was in the negative by a substantial majority, and the third proposition as to sale by pharmacists upon physician's prescription was in the affirmative by a majority of two. The vote upon the fourth proposition as to whether there should be a sale of liquor by hotel keepers was declared to be a tie, which under the provisions of the section above referred to prevented the issuing of a liquor tax certificate for the sale of liquors in such town.

No question is raised as to the vote upon the first three propositions. As to the fourth proposition, the respondent, who owns a hotel in the town and who will be seriously damaged if the sale of liquor by him is prohibited, within 20 days after such election, by an order to show cause, instituted proceedings under section 381 of the Election Law (Consol. Laws 1909, c. 17) for the issuance of a writ of mandamus requiring the production of the ballots rejected by the inspectors as void, for the purpose of determining whether they were properly rejected or not, and to compel the counting of the same if it should be decided they were valid.

[1, 2] Upon the return of the order to show cause, the appellants raised two preliminary objections: One, that the court had no power to entertain the proceeding because the hearing for the mandamus was not had within 20 days succeeding the election, and the other that section 381 of the Election Law conferred no power upon the court to make a judicial investigation to determine the validity of rejected ballots cast upon a question or proposition submitted to the voters, but that such jurisdiction related only to ballots cast for candidates for office. These preliminary objections were overruled, and the ballots rejected as void being produced the court determined that four of them were valid ballots and lawful votes on the fourth question submitted and should be counted, three in the affirmative and one in the negative, and directed the boards of inspectors to reconvene for that purpose. The result of such recount would be that the proposition to allow the sale of liquor by hotel keepers was carried in the affirmative by a majority of two.

We think the learned Special Term was correct in overruling the preliminary objections raised. So far as material to the question presented, section 381 of the Election Law prescribes that, if any certified original statement of the result of the canvass in an election district shall show that any of the ballots therein were rejected by the inspectors as void, a mandamus may upon the application of any candidate voted for at such election in such district within 20 days thereafter issue out of the Supreme Court to the inspectors of election making such statement, requiring a recount of the votes on such ballots. The town meeting or "election" was held on the 7th day of November. The order to show cause why a mandamus should not issue was granted on the 25th day of November returnable on the 2d day of December. The obtaining of the order to show cause was within 20 days succeeding the election. This order to show cause was granted

upon proper papers setting forth proper facts for. the granting of a mandamus. The words in the section "within twenty days thereafter" refer to the application for relief, and not to the actual obtaining and issuing of the writ within that time. The application having been made in the form of an order to show cause within the prescribed time, it did not matter whether the hearing and decision as to the issuing of the mandamus was had within that time or not. If the rule were otherwise, a party might be deprived of his remedy if argument for the mandamus should take place within the 20 days, and the court should not determine that it was proper for it to issue until after that time had expired.

Notwithstanding the peculiar language of section 381, prescribing that an application may be made by a "candidate voted for at such election," we are of opinion that the section permits a judicial investigation of void ballots which have been rejected upon propositions voted upon by electors, as well as of ballots cast for candidates for office.

Section 13 of the Liquor Tax Law makes it lawful upon proper petition for the electors of a town to vote upon four propositions with respect to the sale of liquor in such town, and section 316 of the Election Law makes it the duty of the election officials to provide specified kinds of ballot boxes, and amongst its provisions is the following:

"If proposed constitutional amendments or other propositions or questions may be lawfully voted upon thereat, there shall be a separate ballot box at each polling place for the reception of ballots upon such amendments or propositions or questions, which box shall be conspicuously marked 'box for questions submitted.' "

Section 332 provides that the ballots to be provided for voting upon such questions "shall comply with the requirements of official ballots for candidates for public office in so far as such requirements are applicable thereto"; and section 420 declares that with respect to voting machines the word "ballot" includes votes cast on questions submitted to voters upon which they may vote "Yes" or "No."

Section 373 of the Election Law provides that, if ballots are voted upon any constitutional amendment, proposition, or question, a similar return (to that made upon votes for candidates) of the ballots and votes cast thereon shall be made by the inspectors.

The questions were lawfully voted upon because the law specifically authorized their submission to the electors of the town, and the votes were cast and guarded and counted, and the return made under the provisions of the Election Law. It would appear to have been the intention of the Legislature by the enactment of section 381 of the Election Law to authorize a summary judicial review of ballots rejected as void and not counted (including ballots counted under protest) upon questions and propositions legally voted upon as well as of like ballots cast for candidates.

The appellants invoke the Election Law to declare the invalidity of the ballots in question, and to sustain the decision of the board of inspectors that they are void. If the Election Law does not apply, then their validity or invalidity cannot be gauged by its provisions.

This court assumed, without the question being raised, that the Election Law did apply to propositions submitted under the Liquor Tax Law in People ex rel. Henness v. Douglass, 142 App. Div. 224, 126 N. Y. Supp. 908, and in another phase of the same case reported in 143 App. Div. 750, 128 N. Y. Supp. 547. The question was raised, but not decided, because the proceeding was not begun within 20 days after the election, in People ex rel. May v. Strang, 137 App. Div. 848, 122 N. Y. Supp. 617. It was expressly held in People ex rel. Decker v. Parmelee, 22 Misc. Rep. 380, 50 N. Y. Supp. 451, that section 114 of the Laws of 1896, c. 909, from which the present section numbered 381 is derived, authorized the court to determine whether ballots cast upon such propositions were properly declared by the inspectors to be void. And in People ex rel. Bell v. Board of Canvassers, 65 Misc. Rep. 223, 121 N. Y. Supp. 365, the proceeding was entertained and decided without question. Authority, as well as the reading of the provisions of law referred to, leads to the conclusion that the court properly held it had jurisdiction to determine whether or not the ballots which were rejected as void were properly rejected or not.

[3] It remains to be considered whether the learned Special Term was correct in directing the inspectors to count the four rejected ballots. These ballots had printed upon them all four of the excise questions, numbered, respectively, 1, 2, 3, and 4. The first question related to the selling of liquor to be drunk on the premises; the second to the selling of liquor not to be drunk on the premises; the third to the selling of liquor by a pharmacist on physician's prescription; the fourth to the selling of liquor by hotel keepers. The several propositions were separated by a heavy black line, and in front of each proposition and under each other were the words "yes" and "no" in large type, and opposite each word was a square within which the cross-mark for voting is required to be made. If a voter accurately voted "yes" or "no" upon all the propositions, he would therefore make four ballot cross-marks on the ballot. Two of the ballots in dispute contain five cross-marks, in one of which the voter voted both "yes" and "no" upon the second proposition, and in the other of which he voted both "yes" and "no" upon the third proposition. One of the ballots contains four cross-marks, but the voter voted both "yes" and "no" upon the first proposition and not at all upon the second, and "yes" upon the third. The other ballot contains six cross-marks; the voter having voted both "yes" and "no" upon both the second and third propositions. By all four of the ballots the voter voted properly on the fourth proposition; three of the cross-marks being opposite "yes" and one being opposite "no."

The learned court at Special Term held that the ballots were not rendered void as to the fourth proposition because the voter did not properly vote upon the other propositions and nullified his vote on such other propositions by making too many crosses, and that, there being no other marks save a cross-mark in the voting spaces on the ballots, a superfluous number of crosses with respect to the other

propositions did not destroy the vote upon the fourth proposition, the cross-mark as to which was correctly made.

We think this holding was correct. The law required the submission of all four of the excise questions upon the one ballot. The questions themselves, however, are separate and distinct. The voter could vote upon all four of them if he chose, or upon any one of them, and not vote at all upon the others. Rule 6 of section 358 of the Election Law declares that in the case of a question submitted the voter shall make a cross-mark in the blank square space on the right of, and after the answer "yes" or "no" which he desires to give to such question; but the law nowhere declares that, in case he shall make a cross-mark in the square opposite both "yes" and "no" upon any one question, it shall nullify the entire ballot or destroy his vote upon any other question as to which he may make a proper cross-mark.

[4] The inspectors and the court below properly held that marks outside the voting spaces, and erasures and the like, rendered the ballot void. Nothing of that sort, however, appears on the ballots in controversy. The only trouble with any of them is that the voter nullified his vote upon one or more of the questions by making a clean perfect cross-mark in the voting spaces as to both "yes" and "no" thereon. Upon the question as to selling liquor by hotel keepers, however, the vote in each instance was properly marked.

The Election Law specifically provides that a surplusage of cross-marks within the voting spaces upon a ballot shall not in certain instances vitiate the ballot. Rule 2 of section 368 directs that, where a voting mark shall be made in a circle above a ticket and marks shall have also been made in the voting squares before the names of candidates on that ticket, the marks in the squares shall be treated as surplusage, and the vote counted as though no mark appeared anywhere except in the circle. Rule 6 provides that, where a voting mark shall be made in more than one circle, the vote shall be counted for those candidates for office against whom no candidate is named on the other ticket. Where a cross-mark is made in the circle, and the voter also makes cross-marks before each of the names of opposing candidates running for the same office, the ballot is not rendered wholly void, but simply cannot be counted for either of the candidates for that particular office. Election Law, § 368, rule 7; People ex rel. Feeny v. Board of Canvassers, 156 N. Y. 36, 50 N. E. 425.

If this latter rule be applicable to ballots upon which questions are submitted to voters as well as to ballots cast for candidates, there can be no question as to the validity of all four of the ballots in controversy. In the case of a ballot for candidates, the voter nullifies his vote as to two opposing candidates by making a cross-mark before the names of each and thereby voting for neither; but because he made a proper cross-mark in the circle the law commands that his vote shall be counted for all the other candidates on that ticket. In the case of a ballot upon questions submitted the voter nullifies

his choice upon one of the questions by voting both "yes" and "no"; but by making a proper cross-mark in the voting square upon the other questions he votes either in the affirmative or in the negative upon that particular proposition.

There being no command that the ballots shall be nullified by such double voting upon any one question, we think that the double marking simply nullifies the vote as to the particular question so marked, and that, if the ballot be otherwise correct, it must be counted either in the affirmative or negative for the questions which are properly marked. In the case of candidates the voter merely spoils his vote as to the candidates which are doubly marked; but his mark in the circle indicates his intention to vote for the other candidates not so marked. In the case of submitted questions the double marking spoils his vote as to the question doubly marked, but as to the other questions, his marks being correct, clearly indicate his intention.

If the Legislature intended to provide that the double marking of any question should vitiate the whole ballot and render void all votes on the other questions submitted, it could easily have so enacted. In the absence of any such provision, we think it may fairly be inferred that it assumed that the rules which it carefully prescribed with respect to ballots cast for candidates should be also applicable to ballots cast upon questions submitted to the voters, and that surplusage of voting marks as to any one question made in the voting squares only nullifies the particular question involved, and does not render the entire ballot void.

If this view be correct, it follows that the order should be affirmed, with $10 costs and disbursements. All concur. KELLOGG, J., in memorandum.

JOHN M. KELLOGG, J. (concurring). Rule 9 of section 368 of the Election Law declares what ballots are void, and that a void ballot cannot be counted for any candidate thereon. The rule does not make a ballot void because a single cross-mark made for the purpose of voting is put in too few or too many of the circles or voting spaces. Rule 7 of the section provides that if the voter marks more names than there are persons to be elected, "or if for any other reason it is impossible to determine the voter's choice of a candidate for an office to be filled, his vote shall not be counted for such office but shall be returned as a blank for such office."

Reading rules 7 and 9 with rule 6, I think it is apparent that, if there is nothing irregular about the ballot but the manner of making a proper cross-mark in the circles or voting spaces, the ballot is not void, but it cannot be counted as to any office or position as to which the voter's intent cannot be ascertained, but the ballot may be counted where the voter's choice can be determined.

It follows that the four ballots were properly counted.