In the Matter of the Application of WILLIAM BEWLEY, to Review the Nomination of WILLIAM W. CAMPBELL, as a Candidate of the Republican Party for the Office of New York State Senator from the Forty-seventh Senatorial District.

Supreme Court, Niagara County, October 11, 1930.

*Dudley, Gray & Phelps* [*Earl W. Brydges* of counsel on the argument; *William W. Storrs, Burt A. Duquette* and *Alan V. Parker* of counsel], for the petitioner.

*James O. Moore* [*George W. Riley* and *Eugene Warner* of counsel], for the respondent Campbell.

HARRIS, J. On the application of the petitioner, made on the 26th day of September, 1930, the Hon. GEORGE A. LARKIN, one of the justices of this court, issued an order directed to William W. Campbell, the alleged successful candidate for the office of Senator in the Forty-seventh Senatorial District of this State, to Michael S. Niland, constituting the board of elections of the county of Niagara, James T. Bennett and Thomas Hanlon, constituting the board of elections of the county of Orleans, the Secretary of State of the State of New York, and the Republican county committees of the counties of Niagara and Orleans, directing such respondents to show cause, at a Special Term of this court, on the 6th day of October, 1930, why the court should not make orders leading to the investigation of the primary election in reference to such office of State Senator, held September 16, 1930, with the ultimate object of obtaining the final order of the court requiring a new primary election to be held in the place of the one held on September 16, 1930, on the grounds that at such primary election of September sixteenth fraudulent practices interfered with the election of the petitioner, and that discrepancies in the returns made by the inspectors of election show that the vote cast was not properly counted and credited. The order to show cause directed that service be made on each of the respondents on or before September 29, 1930, and such service was made on the respondents Campbell, Bennett and Niland on September 27, 1930, and on the respondent Secretary of State September 29, 1930.

The provisions of section 330 (Art. 14) of the Election Law provide that a proceeding looking to the reholding of a primary election must be instituted within ten days of such primary election, and that a proceeding looking to a recanvass or correction of an error in the canvass must be instituted within twenty days of an election.

Preliminary to the taking of proof and the argument of this proceeding on its merits, the respondent Campbell made the following objections to the hearing of the proceeding on its merits:

(1) That being a proceeding looking to the direction for the holding of a new primary election, such proceeding should have been instituted by service on the respondents within ten days after such primary election. (Election Law, § 330, subd. 2, as amd. by Laws of 1924, chap. 405.)

(2) That the provisions of subdivision 4 of section 330 of the Election Law (as amd. by Laws of 1926, chap. 237) refer only to a general election, and that, therefore, the limitation of twenty days cannot be of any avail to the petitioner; and

(3) That the inspectors of election who had originally canvassed the votes, and the town clerks who, in some instances, are the custodians of the ballots after the election, should have been made parties to the proceeding.

In reference to the second objection, I am of the opinion that the term "election," as used in subdivision 4 of section 330, includes primary, special and general elections, my conclusion being based on the language of the Election Law, which, when the Legislature distinguishes among these types of election, always has a specification of whether it is a primary, special or general election; subdivision 4, using the term "election," without any qualification, must include all types of election, primary, special and general.

In reference to the first objection, I am of the opinion that in using the word "instituted" the Legislature intended this word in the broad sense of "originate," and did not intend that there must have been in such a proceeding actual service on respondents within such ten days. The object of article 14 of the Election Law is to endeavor to prevent frauds in elections and to remedy such frauds, and it would be unfair to the voters and to a candidate who has been deprived of nomination by fraudulent practices to limit the definition of the word "instituted" to so narrow a construction as the respondent Campbell urges. This thought on my part is reinforced by the holding of the learned courts in *Matter of Tamney* v. *Atkins* (151 App. Div. 309; 209 N. Y. 202, 205), by the practice of the Legislature in providing that when a Statute of Limitation is about to run, delivery to the sheriff of papers to be served is

practically equivalent to such service, so far as stopping the running of the Statute of Limitation, and in further providing that in case of provisional remedies, the granting of such a remedy is equivalent to the court taking and having jurisdiction of the action itself.

In reference to the third preliminary objection raised by the respondent Campbell, that the inspectors of election and, in certain cases, the town clerks, should have been made parties to this proceeding, I am of the opinion that section 335 of the Election Law gives ample warrant to the court, after the proceeding is instituted, to bring in further parties, and, in a proper case, I should feel no hesitancy to direct that in this proceeding the inspectors of election and town clerks should be brought in as parties thereto.

Respondent Campbell further argued that the proper and only remedy of the petitioner was a quo warranto proceeding, but I think he has been misled by those decisions which apparently hold that contests as to who was rightfully elected to the position of committeeman, which is a party position, should be, like title to an elective office, tried out in quo warranto proceedings because I am of the opinion that a party nomination is not a party position.

In view of the foregoing conclusions, I have decided to consider and dispose of this matter on the merits.

In reference to the merits, the petitioner, by affidavits and the testimony of witnesses on the stand, endeavors to establish that certain fraudulent practices were pursued by those advocating the nomination of the respondent Campbell to the detriment of the petitioner; and the petitioner further endeavors to show that on the face of the returns of the election inspectors, in both Orleans and Niagara counties, there are such discrepancies as must lead a court to the conclusion that the inspectors pursued fraudulent practices in counting and canvassing and returning the result of the election, or were so negligent that the result of such primary election is in doubt.

The petitioner builds up his claim of fraudulent practices on the affidavits of one Arthur Colosi, one Mark T. Lambert, one Harold Marvin, one Frank Meyers, one Thomas W. Shuffle, one George Fritz, one Casper J. Dawson, one Richard Bewley, and of Mr. Brydges, one of the counsel for the petitioner. Briefly summarized, the contents of the affidavits of these persons and of the affidavits presented to the court by the respondent in opposition thereto are as follows: Colosi says that while in attendance at the polling place in and for the second district of the fifth ward in the city of Niagara Falls, he observed one Bowman, a member of the Republican city committee of Niagara Falls, soliciting votes in the polling place for the respondent Campbell, and that during

the counting of the ballots the said Bowman controlled the inspectors counting such ballots, and caused them to illegally mark void some twenty-five ballots.

In answer to such affidavit the respondent Campbell produces the affidavit of Mary Allen, Clara Meehan, Jessie Hall and Edith M. Young, the inspectors of election of this district, who state that the contents of Colosi's affidavit are untrue, and that Mr. Bowman did not in any wise influence them in their actions, and that the ballots cast in their district were honestly and actually counted as the same were cast, and that the return made is a correct and true return of such ballots; and the respondent Campbell also produces the affidavit of the said Bowman, which states that he was a watcher at said primary election, and denies that he in any way violated the law, as claimed by Colosi. This raises a question of fact, and I have come to the conclusion, after reading such affidavits and considering that the inspectors, as public officers, are presumed to have performed their duties properly (*Matter of Whitman*, 225 N. Y. 1) that there was no fraud committed, as claimed by Mr. Colosi.

Mr. Lambert claims that he was present when the vote was canvassed in the second election district of the fifth ward of Lockport, and says that he saw a ballot cast for the respondent Campbell and counted by the inspectors as a vote for Campbell, on which the voter had indicated his choice by placing a cross after the name of said Campbell; and that he saw a ballot rejected by said inspectors which had a cross in front of the name of the petitioner, which cross encroached beyond the voting space, and that he saw another ballot cast which was counted for the said Campbell, on which there was but little trace visible of a voting mark.

The respondent Campbell produces no proof in reference to these questions, but I prefer to rest my conclusion on the fact that the inspectors who were handling the ballots had a better opportunity to see the manner in which they were marked than had Mr. Lambert, and that such inspectors properly counted the ballots as they were marked, and declared void those that were not properly marked.

Mr. Marvin says that he was present at the canvass and count in the sole election district of the third ward of North Tonawanda, and he says that the inspectors counted at least twelve ballots whereon the voters had marked a " V " shaped mark, instead of a cross. He did not say for whom the ballots were counted.

Mr. Dawson also says that he was present in the same district at the time of the count and canvass, and the inspectors declared as totally void all ballots on which appeared in certain places more

names than there were to be nominated for an office or to be elected to a party office.

It would appear that if both of these men were watching the same ballots, they would have noticed the same occurrences; but from their affidavits it appears that they did not so observe.

In opposition to the proof made in the affidavits of Mr. Marvin and Mr. Dawson, the respondent Campbell produces the affidavits of Frank Budnik, Joseph Pasiciak, Julius Welland and Stanley Majka, the inspectors of election, who deny that they counted any ballots for any candidates where a mark other than an " X " was inserted in the voting space, and say that they did not rule as totally void any ballots upon which more than the legally authorized number of names were marked, except as to the offices which would be affected by such excess number of names, which did not include the office of State Senator.

In this instance I prefer to take the sworn word and the official report of the inspectors of election to that of witnesses who do not agree as to what occurred.

Mr. Dawson further swears that he was present at the voting place of the first district of the first ward of the city of North Tonawanda during a part of the time when the vote was being canvassed, and that he saw one Ramsey soliciting votes for Campbell in the polling place, and that he, the said Dawson, protested against the practices of the said Ramsey to one Louis Wollenberg, chairman of the board of inspectors.

The respondent Campbell supplies the affidavit of the said Ramsey, secretary of the Young Men's Christian Association of the city of North Tonawanda, and he denies that he did any electioneering within the booth, and in this he is corroborated by the affidavit of Mr. Wollenberg, chairman of the board of inspectors, a Democrat, who says not only that Ramsey did not solicit within the booth, but that Dawson did not complain to him, Wollenberg.

I decide this question of fact against the petitioner.

Mr. Meyers and Mr. Shuffle state that they were present at the polling place in the sole election district of the second ward of the city of North Tonawanda when the inspectors of election canvassed and counted the votes in such district, and that certain ballots were erroneously counted as totally void to the loss of the petitioner, but these two men differ as to the number of such ballots, and as against the proof presented by them the respondent presents the affidavit of the inspectors of election of the district, who say that a true and correct count and return was made by them.

On the questions raised by the affidavit of said Meyers and

Shuffle, I am deciding the question of fact in favor of the respondent Campbell.

Mr. Fritz says that for a short time he was present while the inspectors of election in the first election district of the fifth ward of the city of North Tonawanda were canvassing the ballots cast in such district, and that he saw a ballot counted as a legal vote for Campbell which was irregularly marked. There is no affidavit in opposition. It may be that in this case there was one ballot improperly counted, but it also may be that during the time when Mr. Fritz was not at the polling place, such ballot, if it did exist, was again considered by the inspectors.

Mr. Richard Bewley testified that he was present when the inspectors of election canvassed the ballots in the second election district of the second ward of the city of Lockport, and that he saw one ballot counted for the respondent Campbell, which was marked in an improper place.

There is no answering affidavit, and there may have been one vote illegally counted for the respondent Campbell in this district. It is significant that neither Mr. Richard Bewley nor Mr. Fritz protested to the inspector against the counting of the single ballot which each one claims was improperly marked.

Mr. Brydges, in his affidavit, says that he was informed by one John F. McNulty that there was an agreement made among the inspectors of the first district of the eighth ward of the city of Niagara Falls to accept as legal votes ballots which were irregularly marked, and he further says that the reason he makes the affidavit is that the said McNulty was outside of the city of Niagara Falls at the time of the making of such affidavit. On the hearing before me the counsel for the petitioner produced the said McNulty as a witness, and he denied that he knew of any such agreement, and he asserted that he was within the city of Niagara Falls on the day that the affidavit was made by Mr. Brydges.

The inspectors of election in this district, by affidavit, state that there was no agreement made by them to count ballots irregularly marked, and that they did count one ballot which was marked with a " V," but that they have no recollection in whose favor such ballot was cast.

On the questions raised by the affidavit of Mr. Brydges, I have come to the conclusion that there was no irregularity in the counting of the ballots in such first election district of the eighth ward of Niagara Falls, except possibly the counting of one ballot with a " V " instead of an " X."

It is significant that except for the witness McNulty, the petitioner did not produce in open court any of the persons whose affidavits

in reference to irregular count and canvass were presented at the hearing on this proceeding.

In view of the contents of such affidavits and the answering affidavits produced, and the presumption that the election officers performed their duties in a legal manner, I decide that there was no fraud committed in the conduct of such election in the county of Niagara.

The petitioner further claims fraud in the counties of Niagara and Orleans, basing such further claim on what the petitioner wishes the court to believe is an unusual and inexplicable number of blank votes shown on the returns for such counties.

The total vote for the office of State Senator cast in the entire district, as returned by the inspectors of election, shows that in the county of Niagara Mr. Bewley received 8,489 votes, Mr. Campbell received 8,890 votes, and that, in so far as the office of State Senator was concerned, there were 186 void votes and 1,003 blanks, and that Mr. Campbell's majority in Niagara county was 401, and that in the county of Orleans Mr. Bewley received 1,868 votes; Mr. Campbell received 1,542 votes, and that the majority for Mr. Bewley in Orleans county was 326 votes.

Mr. Duquette stated that the number of blanks in Orleans county aggregated, in so far as the vote for Senator was concerned, a total of 720.

The returns from the county of Niagara, in which there was a spirited contest for nomination for Member of Congress, which office was first on the list of candidates to be voted for, showed that, in the first Assembly district, in so far as the office of Member of Congress was concerned, there were 348 blanks, for the office of Senator, 317 blanks, and for coroner, blanks aggregating several thousand; and that in the second Assembly district, blanks for Member of Congress totaled 456, for Senator, 686, and for coroner, several thousand. I can see no reason, in so far as the county of Niagara is concerned, to hold that there was an unusual number of blanks in the vote, and there is no inference of fraud or of discrepancies reached through negligent accounting. The number of blanks probably means that persons were interested in candidates for certain offices and the issues advocated by them, and not in the candidates for other offices.

In reference to the question of blank votes shown on the returns of inspectors for the county of Orleans, proof is made by the petitioner as to six specific districts — the second, third and fifth election districts of the town of Albion; the second election district of the town of Murray; the first election district of the town of Gaines, and the second election district of the town of Yates.

The ballot return sheet for the second election district of the town of Albion shows that the total number of votes cast in the said district was 132, and the tally sheet shows that on the office of State Senator in such district the votes were as follows, viz.: Bewley, 21; Campbell, 86; blank, 151; void, 6. The ballot return sheet for the fifth election district of the town of Albion shows that the total number of ballots cast was 71, and the tally sheet shows that the votes cast for the nomination for State Senator in such district were as follows: Bewley, 23; Campbell, 35; blank, 84; void, none. The ballot return sheet for the second election district of the town of Murray shows that the total number of ballots cast in said district was 82, and the tally sheet for said district shows that there were cast for the nomination for State Senator in said district the following ballots: Bewley, 51; Campbell, 32; blank, 0; void, 81. The ballot return sheet for the second election district of the town of Yates shows that the total number of ballots cast in said district was 79, and the tally sheet for said district shows that the vote cast in said district for the nomination for State Senator was as follows: Bewley, 37; Campbell, 35; blank, 85; void, 1. The totals of each of these last-named four districts as taken from the tally sheet show a considerable excess over the votes cast in such districts as shown on the ballot return sheets for such districts. To my satisfaction this has been explained by the following: It was the practice of the inspectors in these districts, in common with the practice in other districts, in counting the ballots, first to double the number of possible ballots for both candidates, then to count the ballots for each candidate and subtract such ballots for the candidate from the total, and to declare the remainder blank, thus, in each case, apparently showing an excess vote where such excess vote actually did not exist. This conclusion is corroborated by an inspection of the ballot return sheets and the tally sheets of the district, which shows that the same practice was followed as to other offices, and is further substantiated by the affidavits of the inspectors of election of the second election district of the town of Albion and of the members of the board of elections of Orleans county.

The apparent discrepancy in reference to the third election district of the town of Albion is explained by the affidavit of the election inspectors of said district, and by an examination of the tally sheet which show that an error occurred in the tally blanks for the office of Member of Congress, and such discrepancy was copied as to offices following on the sheet, and that such discrepancy does not affect the vote as cast, counted and returned in such district for Mr. Bewley and Mr. Campbell.

The ballot return sheet for the first election district of the town of Gaines showed that the total number of ballots cast in said district was 153, divided as follows: Bewley, 24; Campbell, 92; blank, 32; void, 5. The petitioner suggests that the number of blanks, 32, is unusual, but produced no proof to substantiate his claim.

As a result of the proof before me, there may have been improperly credited one ballot in the second election district of the second ward of Lockport, and one in the second election district of the fifth ward of Lockport, at the most, two in the first district of the eighth ward of Niagara Falls, one in the first election district of the fifth ward of North Tonawanda, all in Niagara county, and one in the second election district in the town of Murray, county of Orleans.

In view of this small number of discrepancies, and in view of my finding that no fraudulent practices were committed at the primary election of September sixteenth, I deny the relief sought by the petitioner herein, because I may grant such relief only when it appears that the discrepancies were such that the result is likely to be changed. (*Matter of Coughlin*, 137 App. Div. 283; affd., 198 N. Y. 613; *Matter of Hines*, 141 App. Div. 569, 575.)

Therefore, there may be prepared and presented to me for signature an order providing that the petition and proceeding herein be dismissed on the merits.