W. M. ROBINSON, Appellee, v. BOARD OF SUPERVISORS of Davis County, et al., Appellants.

No. 43665.

664

NOVEMBER 24, 1936.

W. R. Fimmen, County Attorney, and Buell McCash, for appellants.

Verne J. Schlegel and D. W. Harris, for appellee.

RICHARDS, J.—This action of mandamus was brought to obtain an order demanding defendant Board of Supervisors to build a bridge where the Fox River drainage ditch crosses what plaintiff claims is a public highway. The action is founded on section 7539, Code 1935, the material portion of which reads:

"7539. Bridges. When such levee, ditch, drain, or change of any natural watercourse crosses a public highway, necessitating moving or building or rebuilding any secondary road bridge, the board of supervisors shall move, build, or rebuild the same, paying the costs and expenses thereof from either or both of the secondary road funds. * * *"

On December 16, 1935, the trial court entered decree ordering that a peremptory writ of mandamus issue commanding defendants to construct a bridge over the drainage ditch, where the highway intersects same as said highway was originally traveled, and that defendants have the same completed on November 1, 1936. From the decree, defendants have appealed.

 One proposition relied on by defendants for reversal is that plaintiff failed to prove that such highway ever existed, and, second, that if such road was established the evidence is that it no longer exists because it has been abandoned and relinquished by the public. Defendants have not pointed out with any definiteness wherein they deem insufficient the evidence of the original establishment of this road. From an examination of the record, it appears that the evidence in that respect is sufficient.

Anent defendants' alternative claim, that though established the road has been abandoned and relinquished by the public and no longer exists, the evidence shows the following matters.

As established the road ran north from the town of West Grove on a quarter section line. When it reached a point on the quarter section line of section 26, T. 69, R. 15, it bore off to east of north in rather irregular courses until it reached a point on the north and south half section line of section 23, same township. Thence it extended on north connecting with an east and west highway known as the Drakesville-Bunch Road. The point where the road reached the half section line is approximately the place where the ditch crossed the highway, and this point was one-fourth mile east and approximately one-half mile north of the point where the road deflected to the east. Continuing north from the place where the ditch crosses the highway, the road passes over a prominence known as Monkey Mountain. The portion of this road which it is claimed has been abandoned begins at the point where it deflects to the east and extends to a point north of Monkey Mountain, and is about one and one-fourth miles in length. No claim is made of abandonment of either the portion of the road that extends south from the point of deflection or of the portion that extends north from a point north of Monkey Mountain. Excepting where it crosses Monkey Mountain the alleged abandoned portion of this road traverses bottom land in the valley of Fox River. In 1922 and 1923 the Fox River Drainage District was established. The channel of the ditch was located somewhat north of the meandering natural channel of Fox River and extended northeasterly. The road lay between the ditch and the original channel, and roughly speaking was paralleled by the ditch. For a period of 20 years more or less preceding the trial of the case very little public work had been done on this mile and quarter of road. Across Monkey Mountain the elements had caused such gullies that at the time of the trial it was difficult or perhaps impossible to travel that portion of the road with a team and wagon. In addition brush and trees had grown along the road interfering with traffic and on Monkey Mountain the trees were of considerable size. Soon after the construction of the ditch the county did build a bridge over the new channel where it crossed the highway. This bridge built in about 1923 became unfit or unsafe and it was accordingly taken out by the board in 1929. Some of the materials

were permitted to be used by plaintiff in constructing a bridge across the ditch in order to afford access to his land, at a point about one-quarter mile north and somewhat west from the point of deflection of the highway to the east. This Robinson bridge washed out in 1933. After the board removed the bridge across the ditch in 1929 several owners including plaintiff extended their fences across portions of the mile and quarter of road, leaving gates in at least some of these fences in the vicinity of the places where the fences crossed the road. For many years this portion of the road had been increasingly less traveled and after the removal of the bridge in 1929 through travel was impossible, there being no means of crossing the drainage ditch. Defendants also rely on testimony of statements of persons who were members of the board of supervisors in conversations with various witnesses. Defendants claim that these statements indicate intention of an abandonment of the portion of the road in question. Defendants also rely on the fact that upon the engineer's plat of the drainage district the ditch is not only shown as crossing the highway at the point already mentioned but also as impinging upon or occupying a portion of the highway at another point farther southwest. There is also evidence that large piles of dirt, thrown out in the digging of the ditch, occupy portions of the old road.

That an established highway may be abandoned by the public and its rights therein lost is settled. Lucas v. Payne, 141 Iowa 592, 120 N. W. 59. But the question involves not so much the question of time as the question of the intent and actions of the public. Nonuser is not enough unless coupled with affirmative evidence of a clear determination on the part of the public to abandon.

"It would seem, then, from the cases before cited, and the foregoing discussion, and we so hold, that the board of supervisors may not vacate or discontinue a road, which has been legally established, by its mere failure to rebuild a bridge which has been washed out, or by the failure of the board of supervisors or township officers to work the road. To hold otherwise would tend to encourage litigation for the failure of a county or city to rebuild or repair, even though for a short time, and it would be to hold that the board of supervisors had no discretion

in the matter." McCarl v. Clark County, 167 Iowa 14, 21, 148 N. W. 1015, 1018.

In the record in the instant case there is nothing at all clearly indicating an intent or determination on the part of the public to abandon the road. Rather, the increasing nonuse appears to have resulted from the fact of increasing condition of disrepair until finally after 1929 through passage was completely interrupted by the bridge over the ditch being taken out. Also, weighing against the claim of intentional abandonment by the public is the fact that this road ran south to the town of West Grove and extending north connected with the Drakesville-Bunch road and as such was a connecting link in the public road system. The statements made by persons who are members of the board of supervisors indicating as defendants claim an intention of abandonment, if material at all, have but slight significance in view of the fact that in 1933 and in 1934 the board of supervisors in arranging their secondary roads construction program included proposals for building a bridge such as is demanded by plaintiff. One or both of the plans were approved by the state highway commission but this portion of the plans was not accomplished. There does not appear abandonment by the public.

**▮▮▮** The showing on the plat of the drainage district that the ditch not only crossed the highway but at a point further southwest occupied an additional portion, together with the testimony that quantities of dirt were thrown upon the highway in constructing the ditch, is the basis of a further contention of defendants. Their claim is that by reason of these facts the construction of the drainage ditch became, per se, an appropriation of the highway. Defendants claim that in establishing the drainage district the board of supervisors was lawfully exercising its right of eminent domain including the appropriation of the highway. In support defendants cite State v. Little River Drainage Dist., 271 Mo. 429, 196 S. W. 1115, holding that the legislature may authorize appropriation of property already devoted to a public use to another and different public use whenever in the judgment of the legislature the public interest requires. Defendants also cite Porter v. Internat. Bridge Co., 200 N. Y. 234, 93 N. E. 716, 21 Ann. Cas. 684, and In re Report on Railroad Crossing, 91 Maine 135, 39 Atl. 478. The principles

announced in these cases are not applicable here because the Iowa legislature has indicated its intent that the exercise of eminent domain in establishment of drainage districts shall not per se effect an appropriation or extinguishment of public easements for highway purposes. This intent is found in the following section, Code 1935.

"7537. Construction on or along highway. When a levee or drainage district shall have been established by the board and it shall become necessary or desirable that the levee, ditch, drain, or improvement shall be located and constructed within the limits of any public highway, it shall be so built as not materially to interfere with the public travel thereon."

It follows that the construction of the ditch may not be construed as a legislatively authorized appropriation or extinguishment of the public rights in the highway. This is further sustained by the mandatory provisions of section 7539 supra.

■■■ We find nothing substantial in defendants' position with reference to the question whether a demand was made on defendants before the commencement of the action. It is undisputed that in February and in July of 1935 plaintiff was before defendant board, on one of these occasions accompanied by his attorney. Although alternative propositions were discussed, it is clear that on both of these occasions plaintiff was demanding the bridge that was ordered by the trial court. It appears therefrom that defendants were fully apprised of plaintiff's demands. It also appears that plaintiff prepared another demand, in writing, bearing date July 30, 1935, containing a statement that unless plaintiff be notified within ten days to the contrary it will be understood by him that the silence of the board is a refusal to construct a bridge. This was not served by the sheriff until August 14. The point made by defendants is that this action was commenced prematurely, that is eight days after the service of this written demand and before the expiration of the ten day period referred to therein. Perchance there could be found some equity in defendants' contention if by reason of the written notice they were deceived and deprived of the two days' time in which to determine whether to comply with the demand. But defendants were neither deceived nor were they deprived of anything, because, regardless of the notice or its contents they clearly intended not to build the bridge unless required to do so

and they at no time receded from that intent. It may also be said that proof of demand upon public officials to perform a mandatory public duty has been held not necessary to entitle a plaintiff to a writ, when the public official clearly intended not to do the thing that would have been demanded. Palmer v. Stacy, 44 Iowa 340.

"We cannot bring ourselves to think, that in a case of public duty, like that at bar, in which the act to be done is well known, and would have been performed already, if the party did not intend not to do it; and where it belongs to no one to request it, but it does belong to the defendant to do it, a formal demand or refusal is necessary. It is clear that duty makes the demand, and omission is the refusal." State v. County Judge, 7 Iowa 186, loc. cit. 203.

Defendants say that under sections 4644-c24 to 4644-c34, Code 1935, the board of approval, composed of the board of supervisors and a representative from each township, is the body that determines annually the final adoption of the road program as it pertains to local county roads. The bridge if built would be upon a local county road. Therefrom defendants reach the conclusion that the board of supervisors could not obey the writ issued by the court because it is the board of approval that must determine the manner of expenditures of funds upon roads of that classification. Such authority as the board of approval is given by these sections extends over the expenditure of 35% of the secondary road construction fund, and the authority of the board of supervisors extends over the remaining 65%. Code section 7539 provides that the costs and expenses of constructing a secondary road bridge over a drainage ditch shall be paid by the board of supervisors from either or both of these secondary road funds. The evident purpose of the sections 4644-c24 to 4644-c34 is that in the expenditure of the secondary road construction fund the discretion as to the manner thereof shall be exercised not alone by the board but in part by the board in conjunction with the representatives of the townships. But these sections have reference to expenditures the making of which is discretionary and are without application to an expenditure from those funds that the legislature has made mandatory and has placed beyond the discretion of either the board of supervisors or the board of approval as to whether the expenditure be made.

670

The result is that defendants' argument that the board of supervisors cannot obey the order of the district court because the board of approval determines the manner of expenditure of funds upon local county roads is not sound, the board of approval having no voice in determining whether an expenditure be made which the legislature has said must be made, by the board of supervisors, from these funds.

After reviewing the record it is our conclusion that the trial court had no course other than to grant the writ. We find nothing in the many questions presented by defendants, which have been carefully examined, that would warrant a reversal. The case is affirmed.—Affirmed.

PARSONS, C. J., and DONEGAN, KINTZINGER, HAMILTON, and STIGER, JJ., concur.