Herbert D. Hamm, J.
The petitioners state that this proceeding relating to the issuance of absentee ballots is brought both in pursuance of article 14 of the Election Law and article 78 of the Civil Practice Act. The applicants for absentee ballots have been brought in as parties respondent (Election Law, § 335; Matter of Holmes v. Citizen’s Protective Party, 194 Misc. 866, 867; Civ. Prac. Act, § 192), although it may not have been necessary either under the Election Law (Matter of Bewley, 138 Misc. 108, 111) or under article 78 of the Civil Practice Act (Matter of Williams v. Morton, 297 N. Y. 328, 334). The respondent’s reference to the last sentence of section 1290 of the Civil Practice Act is not germane; this sentence relates only to prohibition and even under the provisions of this sentence mentioned another party need not be joined unless the absence or excess of jurisdiction is in his favor.
As to the Election Law the court has no inherent powers and only such jurisdiction in election proceedings as is expressly conferred by article 14. Section 330 of the Election Law provides:
‘ ‘ The supreme court is vested with jurisdiction to summarily determine any question of law or fact arising as to any of the subjects set forth in this section, which shall be construed liberally. Such proceedings may be instituted as a matter of right and the supreme court shall make such order as justice may require. * * *
“ 7. The rejection by the board of elections of an application for an absentee ballot.”
The respondent urges that the proceeding under the Election Law must fail as the applicants for absentee ballots are not “ joined as petitioners in the within proceeding, although they, if anyone, would be the allegedly aggrieved parties in the factual circumstances set forth in the petition.” The respondent relies *1027 on subdivision 2 of section 331 of the Election Law which in part provides: “ Such court, justice or judge, in a proceeding instituted by any voter whose application to vote has unlawfully been denied by the inspectors, shall compel by order the reception of the vote, within the hours established by law.” This subdivision relates only to the refusal of the inspectors to permit a voter to cast his ballot on election day and not to issuance of absentee ballots by a county board of elections. The powers conferred on the court are contained in sections 330 and 331 of the Election law. It is noteworthy that in all the subdivisions of these sections permitting institution of proceedings the persons who may institute a proceeding are specified except in the single instance of subdivision 7 of section 330. It has been observed even as to applicants absent only for business reasons that “ only a voter determined to exercise the right of elective franchise at the cost of some little trouble would undertake to vote in this manner.” (Shells v. Flynn, 164 Misc. 302, 317, affd. 252 App. Div. 238, affd. 275 N. Y. 446.) To require persons who are so ill or physically incapacitated as to be unable to appear at the polls to institute a proceeding to obtain absentee ballots and to limit this right exclusively and personally to them evidently was not intended since it was not made a requirement. On the contrary, the Legislature, having enacted section 117-a of the Election Law permitting applications for ballots by absentee voters unable to appear personally at the polling places because of illness or disability, expressly and apparently with deliberation omitted in subdivision 7 of section 330 a requirement that only the applicants could institute a proceeding. The Legislature must have been aware that, the inclusion of such a requirement would result in practical disenfranchisement of all of the ill and physically disabled voters whose applications were refused. It is doubtful that the Legislature intended that persons physically unable to appear at the polls should be required to institute legal proceedings to protect their franchise.
The petitioners, as stated, are proceeding also under article 78 of the Civil Practice Act. It is admitted in the pleadings: “ That heretofore there was duly submitted to and filed with your petitioner, augustine f. coyne and the respondent, edward t. nehill, as members of and constituting the board of elections OF RENSSELAER COUNTY and the BOARD OF CANVASSERS OF THE city of troy, new york, applications for absentee ballots, under and pursuant to section 117-a of the Election Law by persons named in Exhibit A attached hereto and made a part hereof as if herein separately set forth in full, which applications are presently filed with the said petitioner, augustine f. coyne and *1028 the respondent, edward t. nehill, as members constituting the BOARD OF ELECTIONS OF RENSSELAER COUNTY and the BOARD OF CANVASSERS of the city of troy, new york, and which will be submitted to this Court on the presentation of this application, all of whom are inmates in and residents of Van Bensselaer Manor. That the said petitioner, augustine f. coyne, and the said respondent, edward t. nehill in their capacity as and constituting the BOARD OF ELECTIONS OF RENSSELAER COUNTY and the BOARD OF CANVASSERS OF THE CITY OF TROY, NEW YORK, duly examined the said applications and did determine that the illnesses or physical disabilities as set forth in the applicants’ statements and accompanying medical certificates were of such a nature as to render the applicants unable to leave the aforesaid institution in order to appear personally at the polling place on the day of the next general election, and did determine that said applicants were qualified voters of the respective election districts containing their residences as stated in their respective statements and that their statements and their respective accompanying medical certificates were sufficient. ’ ’
The answer states as “an affirmative defense ”: “ That respondent, edward t. nehill, in performing the duties of his office as imposed by law, examined the applications for absentee ballots submitted by the persons listed and named in Exhibit A hereunto annexed; that in so examining said applications he determined that a substantial number of the applicants for absentee ballots had, on the said application form, as provided by law, signed their said applications by making s [sic] mark instead of affixing their signature, and that said applicants so executing the said applications recited that they were unable to write by reason of their illness or physical disability; that respondent, in an attempt to secure to such voters their right to cast a ballot for the candidates of their choice without unlawful intervention by persons who might attempt to perpetrate a fraud, upon said voters made a motion at a meeting of the Bensselaer County Board of Elections held on the 18th day of October, 1960, to send a representative of each of the major political parties to the Van Bensselaer Home, which is the popular name given to the Bensselaer County Welfare Hospital, to give assistance to any and all of the absentee voters therein confined who might be in need of assistance and might request the same. That a vote on such motion was had and that petitioner coyne, the other member of the Bensselaer County Elections Board, for reasons best known to himself, voted against the furnishing of such bi-partisan assistance to the absentee voters in need thereof and entitled thereto, despite the fact that *1029 the Election Law, which petitioner Coyne is obliged by law and by his oath to uphold and enforce, makes provision for assistance to illiterate or disabled voters in the manner in which respondent has proposed.”
Subdivision 1 of section 199 of the Election Law provides: “A person entitled to vote may have assistance in voting if: (a) at the time of registration he had made oath of illiteracy or physical disability as prescribed by section one hundred sixty-nine and claims on election day that he is still unable to prepare his ballot without assistance for the reasons stated in such oath; or (b) having been registered personally, he states under oath to the inspectors on the day of election that, by reason of some accident, the time and place of which he must specify, or disease, the nature of which he must specify, he has, since the day upon which he registered, lost the use of both hands, or become totally blind, or affiliated by such degree of blindness as will prevent him, with the aid of glasses, from seeing the names printed upon the official ballot, or so crippled that he cannot enter the voting booth and prepare his ballot without assistance; or (c) having become entitled to vote within this state on or before January first, nineteen hundred twenty-two and having been duly registered otherwise than personally, he is unable to write by reason of illiteracy and makes a statement under oath to the inspectors in the form prescribed by section one hundred sixty-nine; or (d) having been registered otherwise than personally, he is physically disabled in one or more of the ways described in section one hundred sixty-nine and make a statement under oath to the inspectors in the form prescribed by such section.” Paragraphs (a) and (b) relate only to the day of election and paragraph (c) is not relevant as the answer as quoted above refers only to inability to sign by reason of illness or physical disability. So the issue is presented whether the condition imposed by the respondent Commissioner was warranted under the provisions of paragraph (d). It may be noted that section 199 was in existence for many years before the enactment of section 117-a permitting absentee voting by physically disabled voters and hence that at the time of its enactment the right of such persons to vote by absentee ballot could not have been in contemplation. It appears from the answer that the respondent Commissioner voted against forwarding the ballots “ unless the Board of Elections appoints two election officials, representing each of the major political parties to afford proper assistance to those in need of same, as is provided by the Election Law.” Of course, the Board of Elections has no authority to appoint officials other than those mentioned in the statute. However, it *1030 was stated on the argument that the persons present to render assistance would be inspectors of election. The inspectors of election are statutory officers and have no powers or duties except those conferred or imposed respectively by laAV. There is no authority in the Commissioners of Elections either to require inspectors to attend at such institutions or private residences as the Commissioners may direct for the purpose of soliciting the use of their assistance by voters or of proffering their assistance to voters who have received absentee ballots. A court could not compel the inspectors of election to so attend and Commissioners may not do so. No provision is made in the Election Law for such mandate to the inspectors of election or for the enforcement of such a direction. If inspectors of election could be stationed in one institution, they could, if the Commissioners Avere apprehensive as to future irregularity, be stationed in every hospital or infirmary of the county or be required to inquire at private residences if their services were needed by persons physically unable to complete the act of balloting. I think the Election Luav neither provides for nor contemplates such activity by the inspectors or such direction to them by the board. The Penal Law prescribes severe penalties for misconduct and provision is made for objection to absentee ballots (Election Law, § 204, subd. 2) on the canvass at the close of the polls. “ If permission to vote as an absentee voter results in large numbers thus voting and thereby enlarges the possibility of fraudulent and illegal voting, the subject is one for legislative action and the matter can easily and speedily be corrected by the Legislature. The court has nothing to do with such legislative functions and should not legislate judicially.” (Sheils v. Flynn, 252 App. Div. 238, 243, affd. 275 N. Y. 446.) Within the scope of its authority the Board of Elections may exercise judgment and discretion (Matter of Brandow v. Smythe, 13 Misc 2d 1015, affd. 7 A D 2d 698) but such discretion may be exercised only within the orbit of lawful poAvers. In imposing "the condition the respondent Commissioner acted Avithout and in excess of jurisdiction.
It is admitted, as before mentioned, that the Commissioners “ duly examined the said applications and did determine that the illnesses or physical disabilities as set forth in the applicants ’ statements and accompanying medical certificates were of such a nature as to render the applicants unable to leave the aforesaid institution in order to appear personally at the polling place on the day of the next general election, and did determine that said applicants were qualified voters of the respective election districts containing their residences as stated in their *1031 respective statements and that their statements and their respective accompanying medical certificates were sufficient.” Consequently there remained only the ministerial act of mailing the ballots. Where the proceeding is in the nature of mandamus, a person may have an interest and become a petitioner although the matter complained of is not directed against him specifically. The petitioner Coyne, one of the two members of the Board of Elections, has an interest in seeing that the board, of which he is a member, fulfills its functions and performs its duties. The petitioner Harriman, a candidate for county office, has an interest in preventing the disenfranchisement of approximately 187 voters. As a matter of fact, he is personally affected by the respondent’s act and will be so affected by the determination here. Indeed, it has been held that any citizen or resident of the State is capable of presenting to the courts a petition for the enforcement by officials of their mandatory duties.
Mandamus is a proper remedy. “ [T]he power of the court to compel by mandamus the performance of a ministerial duty which election officials have neglected or refused to perform has always been recognized and the jurisdiction of the court in such a matter is not limited to the summary powers provided by the Election Law.” (Matter of Bonacker v. Chuckrow, 166 Misc. 171, 176-177, per Bergan, J.) “ The right to bring this proceeding [mandamus] in a proper case, and the power of the court to compel the performance of a ministerial duty which election officials have neglected or refused to perform, has always been recognized, and the jurisdiction of the court in such a matter is not limited to the summary powers provided by the Election Law.” (Matter of Foote v. Lee, 175 Misc. 60, 61; see, also, Matter of Mansfield v. Epstein, 5 N Y 2d 70.)
The respondent’s objection that the proceeding is premature scarcely requires comment. This is not a case of a proceeding’s being brought prematurely because there remains a possibility that a public officer may still perform his duty.
Subdivision 10 of’ section 118 of the Election Law provides :■ ‘ ‘ If the ballot or ballots are to be sent my mail, such determination shall be made at a time which will afford an opportunity for the transmission and return of the ballot or ballots in the usual course of mail, depending on the location of the mailing address, and which will allow at least one secular day for marking the ballot or ballots, making the necessary statement of absentee voter and remailing; but the investigations shall be concluded and determinations made as to all applicants not later than the seventh day before election.” The minutes of the proceedings of the Board of Elections state:
*1032 “ Commissioner Nehill moved that ballots addressed to the Welfare Home not be sent. Commissioner Coyne not in agreement to this motion. Voted No.
“ Commissioner Coyne moved that ballots addressed to the Welfare Home be sent. Commissioner Nehill not in agreement to this motion. Voted No.”
The respondent Commissioner made his determination not to forward the ballots before this proceeding was instituted. He has made his final determination and it is apodictically clear that in the absence of intervention the ballots will never be received by the applicants. As of this date, the Thursday before election, the ballots have not been mailed and will not be mailed in the absence of direction.
An order may be submitted requiring the respondent Commissioner Nehill in conjunction with the petitioner Coyne to mail absentee ballots to all those persons set forth in Exhibit A annexed to the petition exclusive of John M. Faraci, Marta Christensen and Martha Rehn, who have died.
As a determination has been made on the merits (Civ. Prac. Act, § 1295), the petitioners’ motions, made under section 1293 of the Civil Practice Act and on which decision was reserved, are denied (Ocean Beach Ferry Corp. v. Village of Ocean Beach, 74 N. Y. S. 2d 110, 112, affd. 273 App. Div. 855, revd. on other grounds 298 N. Y. 30). The respondent’s oral motions are also denied.