STOREGARD ET AL. *v.* BOARD OF ELECTIONS OF CUYAHOGA COUNTY ET AL.

6

(No. 876779—Decided October 23, 1969.)

Common Pleas Court of Cuyahoga County.

*Messrs. Miller, Folk & Schutz* and *Mr. Otto W. Schutz,* for plaintiffs.
*Mr. John T. Corrigan,* prosecuting attorney, *Mr. John Dowling* and *Mr. Ford Noble,* law director, for defendants.

WHITING, J. Plaintiffs circulated and filed an initiative petition in the city of Broadview Heights, Ohio, proposing the repeal of a zoning ordinance duly passed by the city council. After certification of the petition to the board of elections a protest was filed. Upon hearing the protest, the board of elections allowed the same and notified the petitioners that the issue would not be placed on the ballot at the general election to be held in Broadview Heights on November 4, 1969.

Plaintiffs seek an order directing the board of elections to place the issue on the ballot for the November 4, 1969 election.

Defendants are the Board of Elections of Cuyahoga County and its members. In essence their position is (1) that plaintiffs' "initiative petition" seeks the repeal of an ordinance and therefore is in fact a referendum petition and as such can not lawfully be submitted to the electorate under the provisions of the city charter and the state code relating to initiative petitions; (2) that the city clerk of Broadview Heights prematurely certified the petition to the board of elections in disregard of the ten-day delay required by Section 731.28, Revised Code; and (3) that the petition was not kept open for public inspection for ten days prior to its certification to the board of elections, as defendants contend is required by Section 731.34, Re-

vised Code. A fourth stated objection that the petitioners did not circulate copies of the zone map and of the ordinance proposed to be repealed has been withdrawn by the defendants.

### Repeal By Initiative Procedure

There is a clear distinction between initiative and referendum. One might therefore assume that initiative procedure may not be utilized to accomplish what is by definition a referendum. Such is not the law of Ohio. In the case of *State, ex rel. Sharpe,* v. *Hitt* (1951), 155 Ohio St. 529, it was held, in the third paragraph of the syllabus:

"The electors of a municipality may by initiative enact a measure conflicting with or repealing legislation previously passed by the municipal council, so long as the subject matter of such initiative ordinance is within the powers of the municipality to control by the legislative procedure."

It could be argued that the rule in the *Sharpe case* applies only when the ordinance sought to be repealed was enacted as an emergency measure pursuant to a charter provision or Section 705.15, Revised Code, and therefore is not subject to referendum. However, the language of the opinion and its approval of Judge Allen's dissenting argument in *State, ex rel. Smith,* v. *Fremont* (1927), 116 Ohio St. 469, indicates the contrary. Ohio has taken the view that both initiative and referendum powers are reserved to the people "on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action." *State, ex rel. Sharpe,* v. *Hitt, supra* (Syl. 1). Though the referendum may be restricted in scope, the initiative is not. *State, ex rel. Sharpe,* v. *Hitt, supra,* at page 540. This is confirmed in *Dubyak* v. *Kovach* (1955), 164 Ohio St. 247, where the opinion points out that the facts in the *Sharpe case* involved an ordinance passed under an emergency clause and therefore not subject to referendum, but went on to say without qualification (p. 252):

"This court held that, since the initiative applies to ordinances and other measures which can be enacted by a

city council, and since such council has the power to pass an ordinance repealing a previous ordinance, such a repealing ordinance can be submitted to the electors under an initiative petition. It would seem there can be no question of the soundness of this rule.''

Also see *Russell* v. *Linton* (1953), 67 Ohio Law Abs. 132.

Petitioners therefore may make use of the initiative procedure provided by the charter of Broadview Heights and the Revised Code to accomplish what would otherwise be designated as a referendum. The fact that the charter distinguishes between the two, and requires more signatures to a referendum petition than to an initiative petition, is of no significance. The Revised Code makes numerous distinctions between initiative and referendum. Those distinctions did not alter the decision in the *Sharpe case.*

### Petition Certified After 10 Days

Aside from designating the number of signatures required for an initiative petition, the Charter of Broadview Heights merely specifies that the provisions of the Revised Code be followed. Section 731.28, Revised Code, specifies, in part:

''When a petition is filed with the city auditor or village clerk * * * such clerk shall, after ten days, certify the text of the proposed ordinance or measure to the board of elections * * *.

''The board shall submit such proposed ordinance * * * (to the electors) at the next succeeding general election, occurring subsequent to ninety days after the certifying of such initiative petition * * *.''

The next general election in Broadview Heights will be on November 4, 1969. In order to meet the ninety-day requirement of Section 731.28, Revised Code, the petition had to be certified to the board of elections on or before August 5, 1969. It was certified on August 5, 1969. However, defendants contend that the city clerk prematurely certified the petition.

Defendants' position is that the petition was not filed until Monday, July 28, 1969, at which time the city clerk

observed the document in the safe at city hall. They urge that, under Section 731.28, Revised Code, certification therefor could not be made until August 8th. Plaintiffs contend that the petition was filed at city hall on Thursday, July 24th, with the president of city council. In plaintiffs' view, Section 731.28, Revised Code, therefore permits certification on August 5th.

Broadview Heights does not have a city auditor. It does have a city clerk with whom, it has been stipulated, all petition papers are to be filed. However, the clerk was on vacation and absent from Broadview Heights on Thursday and Friday, July 24 and 25, 1969. The record does not indicate that anyone else was designated to perform the duties of the city clerk during her absence.

At 1:30 p. m. on Thursday, July 24, during the regular and usual hours for conducting public business, the petitioners arrived to file their petition at the city hall. Upon their discovery of the unforeseen absence of the city clerk, and after consulting with the law director they (as stipulated) "filed" the petition with the president of council. By this time it was 10:45 p. m., but the city hall was still open for the conduct of public business. The president of council accepted the petition in the presence of the mayor and on the advice of the law director. He gave the petitioners a receipt. He then placed the petition in the safe at city hall where it remained except for one day when the city clerk took it to the board of elections to vertify signatures.

The court finds that this activity comprised a filing on July 24 within the meaning of the Revised Code and, insofar as it is in evidence, the charter of the city of Broadview Heights. The city administration acted through the president of council to perform, on behalf of the city, the ministerial duty of an absent clerk. As observed by the Supreme Court of Ohio, provisions for municipal initiative should be liberally construed in favor of the power reserved to the people so as to permit rather than preclude the exercise of such power, and (*State ex rel. Sharpe,* v. *Hitt, supra,* at page 535): "'* * * the object clearly sought to

be attained should be promoted rather than prevented or obstructed.''

Certainly no harm can come from permitting the president of council to perform this function under the circumstances. On the other hand, a holding to the contrary would be in disregard of the admonition of the Supreme Court in the *Sharpe case.*

For further assistance in ascertaining the intent of the Legislature, we may refer to the statutory procedure for the filing of initiative petitions in villages, as distinguished from their filing in cities. The Code provides that they be filed with the village clerk (Section 731.28, Revised Code), and further provides that when the village clerk is absent, council shall appoint ''one of its members'' to perform his duties (Section 733.27, Revised Code). A member of city council, and especially the president of city council, would therefore seem to be a proper person to perform the duties of an absent city clerk in default of any provision to the contrary by ordinance, resolution or charter. No such provision to the contrary appears in evidence.

In considering this issue the court feels it should give some weight to the argument that initiative procedure is for the benefit of the ordinary citizen, who is generally inexperienced in such matters and is no match for public officials daily involved in the intricate technicalities of municipal law and administration. ''You can't fight city hall,'' the saying goes. By its very nature, resort to the initiative often pits the ordinary citizen against ''city hall.'' The instant case is no exception. Plaintiffs seeking to file their petition on behalf of 508 electors during regular office hours, were suddenly confronted by the clerk's unforeseen absence and the fact that time did not permit them to await her return to duty several days later. It is no answer to say that petitioners should have attempted to file at an earlier date, anymore than it is to say that the clerk should not have been on vacation. The truth is that someone should have been duly designated to perform the clerk's duties in her absence and that the city administration should have notified the petitioners accordingly

upon their arrival at city hall. Any other view would permit a reluctant city administration to delay the filing of an initiative petition for days, weeks or months merely by granting the clerk a vacation. When zoning is involved, such delay can be fatal.

*Section 731.34, Revised Code, No Bar To Certification*

Regardless of the date of filing, defendants contend that Section 731.34, Revised Code, requires that, prior to certification, the petition must be made available for public inspection for a total of ten days. They further contend that although eleven consecutive days elapsed between the filing date (July 24) and the date of certification (August 5), the petition was not "open for inspection" on two Saturdays and two Sundays when the city hall was closed, nor on Friday, August 1, when the city clerk removed the petition from city hall for the purpose of verifying signatures at the board of elections. This contention involves a total of five days. If valid, it left only six days during which the city hall was open and the petition was available for inspection prior to certification.

The provision of the statute which defendants seek to apply reads as follows (Section 731.34, Revised Code): "After a petition has been filed with the city auditor or village clerk it shall be kept open for public inspection for ten days."

This section does not state that the petition shall be kept open for public inspection for ten days before it may be certified to the board of elections. It merely provides that the petition be kept open for inspection for ten days. Section 731.28, Revised Code, provides that only the text of the petition be certified and that the petition itself be retained by the clerk. Thus even if we accept defendants' contention that additional days are necessary to comply with Section 731.34, Revised Code, they were available after certification and are still available. Objections arising after certification can be submitted to the board of elections during the ninety-day period that must follow certification and precede submission of the issue to the electorate. Nothing in Section 731.34, Revised Code, re-

quires that certification be delayed beyond the ten days specified by Section 731.28, Revised Code.

Aside from the foregoing, August 5 was nevertheless a proper date for certification. It was the twelfth day after filing. Section 731.34, Revised Code, simply means that for a period of ten consecutive days after filing (possibly plus one day when, as here, the tenth day is on Sunday or a legal holiday, by reason of Section 1.14, Revised Code, and the decision in *Ohio Power Co.* v. *Davidson* (1934), 49 Ohio App. 184), the petition shall be kept open for public inspection on such days and for such hours as the office of the city clerk is open by law.

The literal meaning of the words used in Section 731.34, Revised Code, is that the municipality must keep the clerk's office open and the petition available for public inspection every day for ten consecutive days after filing. However, defendants suggest a latent ambiguity because by law, custom or practice, city and village halls are universally closed on Sundays and legal holidays. Counsel stipulated that in Broadview Heights it is their "practice" to close city hall on Saturdays and Sundays. The pertinent ordinance or charter provision, if any, is not in evidence.

In construing Section 731.34, Revised Code, one might thus conclude the Legislature intended that an initiative petition must be kept open for inspection either (1) for a total of ten days exclusive of intervening Sundays and legal holidays, and possibly even Saturdays and such other days as the city hall is closed by local "practice," or (2) for ten consecutive days at such times during said ten days as the office of the city clerk is open by law.

The Legislature intended the latter of these alternatives. It conforms to the meaning of the words actually used and accommodates the laws generally prevailing in Ohio relating to the closing of public offices. It is also the interpretation that has been applied to other statutes, 52 Ohio Jurisprudence 2d, Time, Section 21; *Chicago Label & Box Co.* v. *Washburn* (1897), 15 Ohio C. C. 510, including some of similar import. *State, ex rel. Kahle,* v. *Rupert*

(1918), 99 Ohio St. 17; *Ohio Power Co. v. Davidson, supra.*

We may refer to another part of the same statute for further aid in ascertaining the intent of the Legislature. It appears that the ten days referred to in Section 731.34, Revised Code, are the same ten days as are referred to in Section 731.28, Revised Code. Section 731.28, Revised Code, reads, in part, as follows: "When a petition is filed with a city auditor or village clerk * * * such auditor or clerk shall, after ten days, certify the petition to the board of elections."

It is beyond dispute that this means ten consecutive days. Furthermore, the same words appeared in Section 4227-1, General Code (predecessor to Section 731.28, Revised Code) and were so noted. *Ohio Power Co. v. Davidson, supra,* and *State, ex rel. Kahle,* v. *Ruppert, supra.* Thus any construction of Section 731.34, Revised Code, to include more than ten consecutive days will depart somewhat from Section 731.28, Revised Code, and should be avoided if reasonably possible. Further, the ten days provided in Section 731.28, Revised Code, have been found to be for the same purpose as is indicated for the ten days in Section 731.34, Revised Code, that is, to give the electors and other interested persons an opportunity to inspect the petition. *Ohio Power Co. v. Davidson, supra.* The purpose of both sections being the same, any doubt as to Section 731.34, Revised Code, should be resolved according to the clear, unequivocal provision of Section 731.28, Revised Code.

As for Friday, August 1, when the city clerk took the petition of the board of elections to verify signatures, the court is inclined to feel that the petition was in fact being kept open for public inspection all that day when, presumably on behalf of the general public, the clerk herself was making such inspection. No issue has been raised by any person who wanted to inspect the petition on August 1. In consideration of the duty imposed by Section 731.34, Revised Code, to keep the petition open for public inspection, and in absence of evidence of an intent on the part of the clerk to disregard her duty, the court assumes that

14

had anyone asked for an opportunity to make inspection that day, which no one did, the clerk most certainly would have made the petition available. Further, under the circumstances and for the reasons previously indicated, the clerk's action on August 1 should not be permitted to defeat the intent of the Legislature and the will of the people any more than should her absence on July 24 and 25. In any event, if August 1 is not included to make up the ten days under Section 731.34, Revised Code—and if Section 731.34, Revised Code, can be construed to delay certification one day by reason thereof—the ten-day period in this case still ends on Monday, August 4, and certification could therefore take place on Tuesday, August 5, as it did.

By reason of the foregoing, defendants have been ordered to submit the ordinance proposed by plaintiffs' initiative petition for the approval or rejection of the electorate of the city of Broadview Heights at the general election to be held on November 4, 1969.

*Judgment for plaintiffs.*