STATE OF NEBRASKA EX REL. ROBERT L. BOYER ET AL., APPELLEES, V. RICHARD L. GRADY, CITY CLERK FOR THE CITY OF NORTH PLATTE, NEBRASKA, APPELLANT.

269 N. W. 2d 73

Filed July 12, 1978. No. 41557.

Maupin, Dent, Kay, Satterfield, Girard & Scritsmier and Dale A. Romatzke, for appellant.

Murphy, Pederson & Piccolo and LeRoy Anderson, for appellees.

Mattson, Ricketts, Davies, Stewart & Calkins and Richard M. Duxbury, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

Relators and appellees, voters and residents of the City of North Platte, Nebraska, filed a petition for mandamus in the District Court for Lincoln County, seeking to require respondent Richard L. Grady, the city clerk of North Platte, to certify signatures on initiative petitions and submit an ordinance proposed in the initiative petitions to the voters of North Platte at a special or general election. Respondent denied that he was required by law to certify the signatures on initiative petitions or submit the proposed ordinance to the voters. Relators moved for summary judgment, which was granted after trial. The District Court ordered the respondent to certify the signatures on the initiative petitions and to submit the proposed ordinance to the voters of North Platte if the number of valid signatures on the petitions was sufficient. Respondent has appealed to this court, contending that the trial court erred in (1) failing to dismiss the action because it was prematurely filed; (2) holding that an existing ordinance could be repealed through the initiative process; (3) holding that section 18-117, R. R. S. 1943, did not apply in this case; and (4) holding that sections 77-27,142 et seq., R. R. S. 1943, did not prevent the use of the initiative process by relators in this case. We affirm the judgment of the District Court.

The facts are not in dispute, and most of the relevant facts are contained in a stipulation entered into by the parties. On June 22, 1976, the city council of North Platte adopted ordinance No. 1890, enacting a 1 percent municipal sales tax. Within 30 days thereafter, referendum petitions were filed by voters, primarily relators, who desired that the ordinance be submitted to the electorate for approval or disapproval. This attempt ultimately was unsuccessful

because of an inadequate number of signatures on the referendum petitions.

On January 28, 1977, relators filed initiative petitions with the respondent, requesting that a proposed ordinance be submitted to the voters of North Platte. The proposed ordinance provided for the repeal of ordinance No. 1890, which would result in abolishment of the 1 percent municipal sales tax. On February 1, 1977, the city council determined that it should not recognize the initiative petitions as legal petitions that required the respondent to call an election. The respondent, who viewed the city council as his superior, then refused to certify the signatures on the petitions or call an election.

Relators instituted this action on February 8, 1977, 11 days after the initiative petitions had been filed with the respondent, by filing a motion for an alternative writ of mandamus, a petition for mandamus, and an affidavit. The trial court ordered that an alternative writ of mandamus should be issued, and that order was apparently served on the respondent on February 10th. On February 28th, the alternative writ of mandamus was actually issued and served upon the respondent. The writ commanded the respondent to certify the signatures on the initiative petitions and call an election if required by law, or to show cause why he refused to do so. Respondent answered on March 15th, denying that he was under a duty to act.

The initiative petitions in question contained the purported signatures of 4,292 voters of North Platte, or approximately 35 percent of the 12,242 registered voters of that city.

Respondent first contends that this action should have been dismissed because it was prematurely filed. In support of his position he relies on section 18-105, R. R. S. 1943, which provides that when an initiative proposal includes a request for a special election and contains the proper number of signa-

tures, the city clerk shall cause the proposal to be submitted to a vote at a special election which "shall be called by him not less than thirty nor more than sixty days from the filing of such proposal." Respondent argues that this statutory provision affords him 30 days from the date of the filing of the initiative petitions in which to call a special election, and that therefore relators filed their petition for mandamus prematurely because it was filed 11 days after the initiative petitions were received by the respondent.

It is a general rule that a writ of mandamus "will not ordinarily be awarded to compel the performance of an act unless it is one which is actually due from the respondent at the time of the application." 52 Am. Jur. 2d, Mandamus, § 90, p. 413. See, also, State ex rel. Sayer v. Junkin, 87 Neb. 801, 128 N. W. 630 (1910). Mandamus in anticipation of default, however, may be granted where "the respondent clearly manifests an intention not to perform the act in question * * *." 52 Am. Jur. 2d, Mandamus, § 90, p. 413. Therefore, even when the respondent's duty to act is not yet technically due, a mandamus action is not considered premature when the respondent has clearly refused to act and refuses to because he claims that he is under no duty to act. See, generally, Folcarelli v. Spencer, 94 R. I. 304, 180 A. 2d 322 (1962); Hazel Park Racing Assn., Inc. v. Inglis, 336 Mich. 508, 58 N. W. 2d 241 (1953); Robinson v. Board of Supervisors of Davis County, 222 Iowa 663, 269 N. W. 921 (1936); Hudson v. Nehill, 25 Misc. 2d 1025, 206 N. Y. Supp. 2d 918 (1960).

In the present case, the record adequately demonstrates that the respondent had no intention of certifying the signatures on the initiative petitions and calling an election, particularly after the city council determined that it should not view the petitions as valid ones which required action by the respondent. It should also be noted that the alterna-

tive writ of mandamus was not actually issued and served upon the respondent until 31 days after the filing of the initiative petitions, at which time the respondent had taken no action. Respondent's argument that he might have changed his mind and acted on the initiative petitions after relators applied for the writ of mandamus, but before 30 days had expired from the time the initiative petitions were filed, and that therefore the action should have been dismissed as premature, is not supported by the record.

Under these particular circumstances, we conclude the exception to the general rule is applicable, and the trial court did not err in refusing to dismiss the action as premature. We recognize, however, that ordinarily a writ of mandamus will not be awarded to compel the performance of an act unless it is actually due from the respondent at the time of the application.

The second issue in this case is whether municipal voters may utilize the initative power to repeal an ordinance passed by the city council of the municipality. Respondent contends that the initiative process cannot be so used when the referendum process is, or was, available for that purpose.

The initiative and referendum powers of municipal voters are established by statute in this state. Section 18-101, R. R. S. 1943, provides: "The right to propose ordinances for the government of any city or other municipal subdivision of the State of Nebraska shall, in addition to being exercised by the mayor and city council of such city or the governing authorities of such other municipal subdivision of this state, be vested in the voters thereof as hereinafter provided." Section 18-102, R. R. S. 1943, requires that an initiative proposal be signed by at least 15 percent of the voters of the city. Ordinarily the proposal is to be submitted to the electorate at the first regular election held after the expiration of

30 days from the filing of the proposal. § 18-104, R. R. S. 1943. If, however, 20 percent of the voters sign the initiative proposal and request a special election, the city clerk shall submit the proposal to the voters at a special election which the clerk shall call not less than 30 nor more than 60 days from the filing of the proposal. §§ 18-103 and 18-105, R. R. S. 1943.

Statutory provisions applicable to cities also provide for referendum petitions as a means of submitting ordinances, passed by the city council, to the voters of the city for approval or disapproval before they become effective. See §§ 18-112 et seq., R. R. S. 1943.

Section 18-101, R. R. S. 1943, contains no express limitations on the power of the initiative reserved to municipal voters, and grants to those voters the same right to propose ordinances as is vested in the mayor and city council. It is the rule that grants of power of municipal corporations concerning the initiative and referendum are to be liberally construed to permit, rather than restrict, the power and to attain, rather than prevent, its object. See 5 McQuillin, Municipal Corporations, § 16.51, p. 203 (3d Ed., 1969). This is analogous to the rule that constitutional provisions, with respect to the powers of initiative and referendum, reserved to the people should be construed to make effective the powers reserved. Klosterman v. Marsh, 180 Neb. 506, 143 N. W. 2d 744 (1966).

This court has never squarely decided whether the initiative power may be utilized to repeal an ordinance passed by the city council of a municipality. In Klosterman v. Marsh, *supra*, however, we stated: "The initiative is in no sense limited as to the time of its exercise. Neither are initiated laws limited to matters on which the Legislature has not acted. By the initiative process, the people may amend or even expressly repeal laws already enacted by the Legislature." See, also, State ex rel. Andersen v. Leahy,

189 Neb. 92, 199 N. W. 2d 713 (1972); 42 Am. Jur. 2d, Initiative and Referendum, § 9, at p. 657.

Courts in other jurisdictions have specifically held that the voters of a municipality can, through the initiative, enact a measure conflicting with or repealing legislation previously passed by the municipal council, so long as the question upon which it enacts such an initiative ordinance is within the power of the municipality to control by legislative process. State ex rel. Sharpe v. Hitt, 155 Ohio St. 529, 99 N. E. 2d 659 (1951); Storegard v. Board of Elections of Cuyahoga County, 22 Ohio Misc. 5, 50 Ohio 2d 240, 255 N. E. 2d 880 (Ct. Com. Pl., 1969). See, also, Smith v. Township of Livingston, 106 N. J. Super. 444, 256 A. 2d 85 (1969), affirmed, 54 N. J. 525, 257 A. 2d 698 (1969). There are, however, cases to the contrary in which courts have held that the initiative power may be used to repeal an existing ordinance only if the repeal is ancillary to the enactment of new legislation, or an ancillary step in proposing a conflicting law or an amendment to a law. See, In re Initiative Petition No. 1 of Midwest City v. Melton, 465 P. 2d 470 (Okla., 1970); Wyatt v. Clark, 299 P. 2d 799 (Okla., 1956).

In essence, respondent argues that the initiative power may not be utilized to repeal an ordinance, and that the referendum is the exclusive process by which voters of a municipality may reject an ordinance passed by the city council. We are not persuaded, however, that the fact that municipal voters may utilize the referendum process to prevent an ordinance passed by the city council from ever becoming effective should preclude them from abolishing an ordinance by repeal through the initiative process. Many ordinances, when first passed by a city council, may not be controversial to the degree that a sufficient number of voters will desire a referendum. With passage of time, however, circumstances may change or voters may simply find an

ordinance undesirable and wish to abolish it, or amend it. We hold that the initiative power, which is to be liberally construed, may be utilized in such cases where the voters attempt to do no more through the initiative process than the city council and mayor could do if they so chose. See, § 18-101, R. R. S. 1943; Klosterman v. Marsh, *supra*; State ex rel. Sharpe v. Hitt, *supra*.

Respondent next contends that referendum and initiative powers have no application to a measure relating to the current support of government departments or to appropriation ordinances. He relies on section 18-117, R. R. S. 1943, which provides that ordinances relating to items of appropriation of money for current expenses of the several departments of the city shall, by a unanimous yea and nay vote of the city council, be deemed to be urgent ordinances to which the *referendum* provisions pertaining to cities shall not apply. That section also provides that the referendum provisions shall not apply to ordinances relating to public ways, public property, utility systems, and other capital projects. Respondent argues that the sales tax ordinance was an "appropriation ordinance," that sales tax revenue was to be used for capital projects, and that therefore the initiative process is not available to relators in this case.

Respondent's arguments are, in some respects, contradictory. On the one hand he argues that the restrictions placed on the referendum power under section 18-117, R. R. S. 1943, should apply in this case, which involves initiative petitions, apparently on the theory that the initiative petitions in this case are really referendum petitions in disguise. On the other hand, he concedes in his brief that a sales tax ordinance, like the one involved in the case, may be subject to attack by referendum.

In any event, even assuming that the provisions of section 18-117, R. R. S. 1943, would apply in this case,

the respondent's position is without merit. First, the record reveals that the sales tax ordinance was not passed by a unanimous vote of the city council. Second, it is clear that an ordinance establishing a new scheme of taxation is not an appropriation ordinance. See Lawrence v. Beermann, 192 Neb. 507, 222 N. W. 2d 809 (1974). Finally, the ordinance was not one relating to capital projects, since it was simply an ordinance establishing a new source of tax revenue.

Respondent's final argument is that only the city council and mayor of North Platte have the power to impose, or decide not to impose, a municipal sales tax under sections 77-27,142 et seq., R. R. S. 1943, commonly known as the Local Option Revenue Act. Section 77-27,142, R. R. S. 1943, provides that any "incorporated municipality by ordinance of its governing body" is authorized to impose a sales and use tax. Respondent contends that "governing body" refers only to the legislative body of a municipality, and that therefore sales tax ordinances are beyond the power of the people to review through the initiative and referendum processes.

This argument is not persuasive. There is no indication that the Legislature intended to grant powers concerning sales tax ordinances solely to city councils and to exclude municipal voters from proposing or rejecting such ordinances through the initiative and referendum processes. Although it is true that during the legislative debate on section 77-27,142, R. R. S. 1943, certain senators referred to city councils enacting a municipal sales tax, these references were not addressed to the issue of whether the initiative or referendum processes could be utilized with respect to sales tax ordinances. We do not read the legislative history of the act as indicating an intention on the part of the Legislature to except sales tax ordinances from the usual powers of initiative and referendum, and it would have been an easy matter

to expressly make such an exception if the Legislature had so intended. Since the powers of the initiative and referendum are to be liberally construed, we do not believe that their use should be limited in the manner suggested by respondent. Under our statutory scheme, there is little doubt that city councils and the electorate are coordinate legislative bodies, and there is no superiority of power between the two. See Klosterman v. Marsh, *supra*.

The judgment of the District Court is affirmed.

AFFIRMED.

CLINTON, J., dissenting.

I respectfully dissent. The effect of the majority opinion is to permit repeal of any existing ordinance by the initiative process rather than by referendum alone. It thus abolishes in many respects the distinctions between initiative and referendum. This has grave consequences which I do not believe the court has taken into consideration.

The fundamental distinction between initiative and referendum goes far beyond the 30-day limitation on referendum, § 18-112, R. R. S. 1943, and postponement of the effective date of the ordinance enacted by the governing body, § 18-116, R. R. S. 1943. If the only difference between the two procedures were the above, the consequences would not be so grave. However, as I will attempt hereafter to demonstrate, the logical and legal consequences of the opinion are that it effectively eliminates all the exemptions from referendum contained in section 18-117, R. R. S. 1943. This could effectively eliminate all municipal government. I will now attempt to demonstrate the above propositions by (1) analysis of the statutes, and by (2) authority on point.

(1) There are no exemptions or exceptions to the initiative power. If, by initiative, the voters can repeal any ordinance at all, rather than just "propose ordinances for the government" of the city, etc., § 18-101, R. R. S. 1943, the exemptions from the refer-

endum power contained in section 18-117, R. R. S. 1943, are of no consequence and are in effect eliminated, because, what cannot be accomplished by referendum, can be by initiative. Such could not have possibly been the legislative intention. Such consequences do violence to the language of the initiative and referendum provisions themselves. If the majority opinion is adhered to, there is no way that the court can logically, or by following any canon of construction, at some later time when it will inevitably be confronted with the problem, read into the initiative provisions the exemptions of the referendum provisions of the statute. The exemptions, by the very words of the statute, section 18-117, R. R. S. 1943, apply only to referendum. We cannot by construction say that section 18-117, R. R. S. 1943, are exemptions from section 18-101, R. R. S. 1943, because this simply is contrary to the plain language of the statute.

The ultimate consequences of the opinion, therefore, are to make all the following which are specifically exempt from referendum, § 18-117, R. R. S. 1943, subject to repeal by initiative:

(1) Urgent ordinances as defined by section 18-117, R. R. S. 1943;

(2) Ordinances in furtherance of or carrying out a policy of the city or relating to projects previously established or approved by an ordinance which itself was subject to sections 18-112 to 18-116 or which may have been approved by the voters at an election;

(3) Ordinances relating to the acquisition, construction, installation, improving and enlarging, including the financing or refinancing of the costs, of public ways, public property, utility systems and other capital projects, including industrial development projects;

(4) Ordinances establishing or changing utility system rates and charges and pay rates and salaries

for city employees other than the mayor and city council; or

(5) Ordinances taking action as to which the statutes applicable thereto provide other means or procedures for voters or persons interested to object to the action taken or proposed.

The likelihood, of course, is that if the problem outlined above arises, the court will do one of two things: (1) Overrule what it has done in this case, or (2) by exercise of raw judicial power read the referendum exemption into the initiative. The first alternative I would obviously advocate; the second could not be done except by complete disregard of the language of the statutes.

Furthermore, I read the language above, "Ordinances . . . an ordinance which itself was subject to sections 18-112 to 18-116" to mean that referendum is a one-shot procedure, i.e., if approved or defeated, you cannot simply turn around and repeat the process. Neither can the council itself, within 1 year from the date of action either by initiative or referendum, modify what the voters have done. § 18-120, R. R. S. 1943. These points give added force to the position that there are real and fundamental differences between the initiative and the referendum.

The exemptions from referendum under section 18-117, R. R. S. 1943, were adopted by the Legislature in 1974. Laws 1974, L. B. 1026, § 1. Previously the only exemption was emergency ordinances. The 1974 amendments were apparently adopted in response to a division opinion of this court, Hoover v. Carpenter, 188 Neb. 405, 197 N. W. 2d 11, Smith, J., in which it was implied that under some circumstances ordinances setting utility rates were subject to referendum. The other exemptions were apparently introduced to remove other areas from tampering by this court. The Legislature, or at least the sponsors of the amendment, whose ideas the Legislature adopted, obviously must have thought that such

items were free from interference by the initiative because that was not available to change existing ordinances. The majority opinion, if adhered to, will change all that.

(2) The constitutional provisions for initiative and referendum pertain only to acts of the Legislature and, of course, have no applicability to the statutes we are discussing. See, Carlberg v. Metcalfe, 120 Neb. 481, 234 N. W. 87; Schroeder v. Zehrung, 108 Neb. 573, 188 N. W. 237. A comparison with the constitutional provisions, Article III, sections 2 and 3, is, I think, instructive, to wit, "The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature. . . ." Art. III, § 2, Constitution of Nebraska. "The second power reserved is the referendum which may be invoked, by petition, against any act or part of an act of the Legislature, . . ." Art. III, § 3, Constitution of Nebraska. The constitutional provision contains exceptions as to referendum. The constitutional provision for initiative contains no exceptions. The exceptions from referendum are "except those making appropriations for the expense of the state government or a state institution existing at the time of the passage of such act." Art. III, § 3, Constitution of Nebraska. The principle which is announced in the majority opinion has logical applicability to the constitutional provisions. Are we willing to say that by initiative the people may repeal "appropriations for the expense of the state government or a state institution existing at the time of the passage of such act?"

Various courts have considered the reasons for the exceptions and exemptions from referendum. The same reasons apply with equal force to the initiative, yet the initiative contains no such exemptions. This would not be true if the same were equivalent. Subjecting some items to referendum or initiative,

for example, such as appropriations for existing institutions, might cripple or destroy the administration of government affairs to the extent of requiring the legislative, executive, or the judicial branches of the government, or all of them, to cease to function. State ex rel. Bonner v. Dixon, 59 Mont. 58, 195 P. 841; State ex rel. Wegner v. Pyle, 55 S. D. 269, 226 N. W. 280. This court has already had occasion to consider the meaning of exemptions from the referendum contained in the Constitution. Bartling v. Wait, 96 Neb. 532, 148 N. W. 507. We held an appropriation for a "memorial armory" was not an expense of government, but, as an illustration, that the cost of maintaining the National Guard would be as it was a state institution.

I would point out that Klosterman v. Marsh, 180 Neb. 506, 143 N. W. 2d 744, involved only the "referendum" power. Its reference to the "initiative" is pure dictum. When that case pointed out that "either," i.e., the Legislature or the people, may repeal acts of the other, it was referring solely to referendum, that was the only thing that was involved. We repeated the dictum in State ex rel. Andersen v. Leahy, 189 Neb. 92, 199 N. W. 2d 713, but added: "We do not reach that question . . . ." We then decided the case on the basis that the voters cannot enact any ordinance which is beyond the powers of the governing body to enact.

Apparently practically all constitutions and statutes contain exemptions or exceptions in the referendum section and none in the initiative. These exceptions generally pertain to one or more of three categories: (1) Provisions for the support of governmental institutions; (2) tax and appropriation measures; and (3) laws for the protection of the public peace, health, and safety. See Initiative and Referendum, 42 Am. Jur. 2d, §§ 14, 15, 16, pp. 664 to 666.

The reasons for exemptions in one and not in the other are, as the language of the Constitution and

statutes earlier quoted suggest, that initiative and referendum accomplish fundamentally different things.

The essential difference between initiative and referendum is generally recognized by the law review writers, i.e., the initiative is for proposing new legislation, the referendum is for attacking legislation already on the books. 49 Wash. L. Rev. 55 (1973); 54 Cal. L. Rev. 1717 (1966).

It is to be noted that the appellees cite no authorities, save Klosterman, for the proposition that existing ordinances may be repealed by initiative. The opinion in this case cites two Ohio opinions and one from New Jersey: State ex rel. Sharpe v. Hitt, 155 Ohio St. 529, 99 N. E. 2d 659 (1951); Storegard v. Board of Elections of Cuyahoga County, 22 Ohio Misc. 5, 50 Ohio 2d 240, 255 N. E. 2d 880 (1969); and Smith v. Township of Livingston, 106 N. J. Super. 444, 256 A. 2d 85 (1969). Sharpe involved repeal by initiative of a parking meter ordinance previously enacted. I think it is arguable whether the case is on point. The statutory language in that case was: "Section 4227-1, General Code, as amended in 1914, recites in part:

" 'Ordinances and other measures providing for the exercise of any and all powers of government granted by the constitution or now delegated or hereafter delegated to any municipal corporation, by the general assembly, may be proposed by initiative petition. . . .'

"Section 4227-2, General Code, reads in part: 'Any ordinance, or other measure passed by the council of any municipal corporation shall be subject to the referendum except as hereinafter provided. . . .'

"Then Section 4227-3, General Code, describes the ordinances which are not subject to referendum, including 'emergency ordinances' passed by a two-thirds vote of those comprising the legislative body involved and which go into immediate effect."

The specific issue in that case revolved around

the question whether the ordinance was exempt from referendum (and initiative) because it was declared to be an emergency ordinance. The Ohio court, as does this court in the opinion, intermingled the concept of initiative and referendum as if they were one. A previous Ohio case, State ex rel. Smith v. City of Fremont, 116 Ohio St. 469, 157 N. E. 318, had categorically held that initiative is not a substitute for referendum. In Sharpe, the previous case was distinguished, however, I do not think it was in fact distinguishable.

In any event, I think the Sharpe case is distinguishable from what we have at hand. I point out: (1) Broad language of the Ohio statute, (2) the confusion of thought in the opinion, and (3) the ultimate decision really rested upon a determination of whether there was a bona fide emergency and hence, despite the court's discussion of initiative, the court was really deciding the emergency question which was actually a part of the referendum portion of the statute. The other Ohio case cited was that of an intermediate appellate court and was simply an adherence to Sharpe. The New Jersey opinion cited by this court in the opinion is, so far as the point here involved is concerned, mere dictum as is Klosterman. The New Jersey case involved the question whether an amendment of a zoning ordinance could be changed by initiative. It was held it could not be. Our own court held similarly in Kelley v. John, 162 Neb. 319, 75 N. W. 2d 713, stating that an amendment of a zoning ordinance (as distinguished from the original overall zoning ordinance and plan) was an administrative, as distinguished from a legislative, matter and so not subject to initiative or referendum. This court modified Kelley v. John, *supra*, in Hoover v. Carpenter, *supra*, implying apparently that administrative matters are subject to initiative and referendum. I certainly disagree with that implication. Both of the above cases were handed

down before the amendment to the referendum statute which brought about the exemptions in question.

Cases on point and contrary to the opinion are Heider v. Common Council of City of Wauwatosa, 37 Wis. 2d 466, 155 N. W. 2d 17; Landt v. City of Wisconsin Dells, 30 Wis. 2d 470, 141 N. W. 2d 245; Wyatt v. Clark, 299 P. 2d 799 (Okla., 1956); Hughes v. Bryan, 425 P. 2d 952 (Okla., 1967); and In re Initiative Petition No. 1 of Midwest City v. Melton, 465 P. 2d 470 (Okla., 1970).

The language of the Oklahoma Constitution, which reserves initiative and referendum to municipalities as well as the Legislature, is in substance the same as our Constitution and statutes. In Wisconsin the initiative, so far as a municipality is concerned, is by statute and is there called "direct legislation." Both the Wisconsin and the Oklahoma cases clearly point out the fundamental difference between initiative and referendum. In Heider, *supra*, the court said that initiative proceedings cannot be used to repeal existing legislation. Similarly, Landt, *supra*. In Wyatt, *supra*, the court said that the power of referendum does not apply to any law which has already become effective. There the court also said: " 'Initiative' means the power of the people to propose bills and laws, and to enact or reject them at the polls, independent of legislative assembly, whereas 'referendum' is right of the people to have submitted for their approval or rejection an act passed by the legislature."

The Wisconsin legislation is somewhat different than ours. As noted, initiative is referred to as "direct legislation." Thus in Wisconsin there is no longer any general statute of referendum although there are numerous specific statutes subjecting particular matters to referendum. The Wisconsin cases are nonetheless on point as may be noted from the following quotations: "We conclude that when a common council has adopted an ordinance or resolu-

tion dealing with a particular subject, sec. 10.43, Stats., does not authorize the filing of petitions to compel the council to repeal such ordinance or resolution, or, in default of repeal, to submit the ordinance or resolution to popular vote. It is true that in a broad sense a repeal of an existing measure is an act of legislation, just as is the adoption of a new measure upon a subject not previously dealt with. Nevertheless, traditional concepts in the field of direct popular legislation, and the history of sec. 10.43, Stats., and its predecessor statutes, convince us that the two types of legislation are not the same in the context of sec. 10.43, Stats.

"Usually the procedure for consideration by the voters of new legislation is referred to as the initiative, and for review by the voters of existing legislation as the referendum.

" 'Generally speaking, the initiative, in the case of municipal legislation, is initiation of municipal legislation and enactment or rejection thereof by the municipal electorate in event the proposed measure is not enacted by their elected representatives.'

" 'The referendum is essentially a referral to the voters of a municipality for their direct vote on an existing ordinance, or at least one that has been passed by the municipal legislative body and that is or may become law except for the successful intervention of referendum procedure. It usually is utilized, practically speaking, with the object in view of defeating municipal legislation that exists, is in process of being enacted, or has been enacted with its effective date in the future, although it is designed obviously to determine the will of the electorate as to such legislation.'

"The source of present sec. 10.43, Stats., was ch. 513, Laws of 1911, creating 'sections 39 i to 39 l, inclusive, of the statutes, relating to the initiative and referendum on acts of municipal councils and of boards of county supervisors. . . .'

"It is true that to some extent several of the statutes just referred to authorize the use of the initiative procedure under sec. 10.43, Stats., to accomplish what is essentially a repeal. The fact that such express authorizations exist in specific areas, does not convince us that the general authority to initiate repeal measures pursuant to sec. 10.43 is implied within that section. The express provisions for the special cases may as well imply that sec. 10.43 would be inapplicable to repeal proposals in the absence of the express provisions." Landt v. City of Wisconsin Dells, *supra*.

It seems apparent to me that all legislative activity is not subject to popular election. If representative governments are to function, there must be some areas in which representative action will be final. In Nebraska, this includes those which are specifically exempted under the provisions of section 18-117, R. R. S. 1943. The effect of the opinion, if followed in the future, will, for the reasons I have outlined earlier, eliminate those exemptions.