HENRY H. BARTLING, APPELLANT, v. ADDISON WAIT, SECRETARY OF STATE, APPELLEE.

FILED JULY 11, 1914.   No. 18,611.

1. **Statutes:** REFERENDUM: PETITION.   Under the provisions of section 2335, Rev. St. 1913, it is not required that the full text of an act of the legislature which it is desired to submit to the people for a referendum vote shall be printed on the face of the referendum petition if the referendum is sought as to the entire act, but if it is desired upon a portion of the act only, that portion which the petitioners desire submitted must be printed upon the petition.

2. **Evidence:** JUDICIAL NOTICE.   The court will take judicial notice that certain cities and villages named in the petition are situated within this state.

3. **Statutes:** REFERENDUM: APPROPRIATION FOR ARMORY.   Under the provisions of section 1c, art. III of the constitution, a referendum cannot be ordered upon acts of the legislature "making appropriations for the expenses of the state government, and state institutions existing at the time such act is passed." The expense of maintaining the national guard of Nebraska, which is a part of the state government, and, in one sense, a state institution, may not be made the subject of a referendum, but an appropriation to erect a building for a memorial armory is not an "expense" under the meaning of this clause, is not within the exception, and may be made the subject of a referendum.

APPEAL from the district court for Lancaster county: WILLARD E. STEWARD, JUDGE.   *Affirmed.*

*Paul Jessen, William H. Pitzer* and *Edwin Zimmerer,* for appellant.

*Grant G. Martin, Attorney General, George W. Ayres* and *A. W. Richardson, contra.*

LETTON, J.

Action for an injunction, which was denied.   Plaintiff appeals.

On April 16, 1913, an act was passed and approved, entitled "An act to establish a memorial armory at Nebraska City and to provide for the payment of the construction

thereof." Laws 1913, ch. 128. This act provided, in sub-
stance, for the establishment in Nebraska City of an
armory building to be known as the "Fort Kearney Mem-
orial Armory" to be located on the ground originally oc-
cupied by old Fort Kearney, and that when so constructed
it should be used and occupied as an armory building by
that company of the regular state militia then or after-
wards located at Nebraska City; that the building should
be constructed under the supervision of the commissioner
of public lands and buildings after the land on which it
was to be built should be conveyed to the state in fee sim-
ple without cost or expense. By section 5, $20,000 was ap-
propriated from the general fund of the state for the
purpose named.

The petition alleges that the plaintiff is a citizen of the
state and a resident of Nebraska City; that there is now
in plaintiff's hands a deed conveying the fee simple title
to the site of old Fort Kearney, with an abstract of the
record title thereto, with instructions from the grantor to
deliver the same to the state of Nebraska for the purpose
contemplated by the act; that he has tendered the convey-
ance and abstract to the governor of the state, but accept-
ance has been refused for the reason that there has been
filed in the office of defendant secretary of state of Ne-
braska a petition under the provisions of article XIX, ch.
20, Rev. St. 1913, demanding that the act be submitted to
the legal voters of the state at the general election to be
held in November, 1914. It is also alleged that the sec-
retary of state, notwithstanding the insufficiency of the
petition in fact and law, as defendant is preparing to sub-
mit the act to the voters of the state for approval or re-
jection at the next general election, and to print the title
of the act and a statement of its provisions upon the bal-
lot to be submitted to the voters. It is alleged that the
defendant has no power so to do, for the reason that by
section 1c, art. III of the constitution, it is provided that
the referendum cannot be ordered upon acts of the legis-
lature "making appropriations for the expenses of the
state government, and state institutions existing at the

time such act is passed," and that such act is within the exception; that there is and has been continually for 25 years past a regular company of the state militia enlisted and organized and having its headquarters in Nebraska City, which is a part of the national guard of the state; that the regularly organized state militia is a part of the government of the state of Nebraska, and an appropriation for its maintenance is an appropriation for the expenses of the state government; and that the national guard is a state institution which was in existence at the time of the passage of the act.

A large number of irregularities in the petitions filed are also alleged, and it is alleged that the signers do not equal 10 per cent. of the legal voters of the state at the last regular election, and that when illegal signatures are deducted there would be less than 5 per cent. of the legal voters in each of two-fifths of the counties of the state. An injunction is prayed to prevent defendant from printing the title and numbers of the act upon the ballot, and from proceeding with the submission of the question of the approval or rejection of the act. The attorney general answers, admitting the passage of the act as alleged, the facts alleged with reference to the site of old Fort Kearney, the tender of the deed to the governor and its refusal, and that the defendant intends to submit the question to the people. The other allegations in the petition are denied. After a hearing, the court found in favor of defendant and denied the injunction.

At the trial the allegations as to the continuous existence of a company of the national guard at Nebraska City, and that the names upon the petitions represented more than 10 per cent. of the votes cast for governor at the preceding election, and more than 5 per cent. in each of more than two-fifths of the counties of the state were admitted. It is also stipulated that of the 26,891 names 1,852 are signed, and their post office address is shown only by the city or village in which the signer purports to live, but neither the county nor state in which they live appears upon the face of the petition, except that which ap-

pears upon the other side of the face of the petition, and that each of the 1,852 names was subscribed to the petition under the printed form. Copies of this and of the back of the petition were in evidence.

It is first argued that the petition is insufficient because, while the statute requires a full and correct copy of the act proposed to be submitted to the vote of the people to be printed upon each petition circulated, the record shows that the word "originally" in the second section was omitted. The act provides that the building should be constructed "upon the ground originally occupied by old Fort Kearney," while the purported copy reads that the buildings shall be constructed upon the ground occupied by old Fort Kearney. The statute provides (Rev. St. 1913, sec. 2335): "The following shall be substantially the form of petition for ordering the referendum against any act or any part of any act passed by the legislature of the state of Nebraska. * * *

"PETITION FOR REFERENDUM.

"To the Honorable———, Secretary of State for the state of Nebraska: We, the undersigned citizens and legal voters of the state of Nebraska and the county of ———, respectfully order that the Senate (or House) Bill No. ——— entitled (title of act, and if the petition is against less than the whole act, then set forth here the part or parts on which the referendum is sought)."

The form provides for printing the title of an act only when a referendum is sought as to the whole enactment. It is only "if the petition is against *less than the whole act*" that it is necessary that the part or parts on which the referendum is sought shall be set forth. There is a distinction between section 2337 providing for the initiative, which plaintiff cites and relies upon, and that for the referendum. The initiative petition must set forth "a full and correct copy of the title and text of the law or amendment to the constitution so proposed by the initiative petition." Rev. St. 1913, sec. 2337. Section 2337 is there-

fore inapplicable, and the omission of the word "originally" does not impair the validity of the petition.

It is claimed that the petition is defective because 1,852 signers of the petition did not give their complete post office address; that the address is shown only by the city or village in which the signer purports to live, but neither the county nor state in which they live appears on the face of the petition, except that each appears on the other side of each petition. Taking the Antelope county petition as an example, there is a certificate to each sheet to the effect that each of the persons signed his name in the presence of affiant, and that he believes each has signed his name and post office address correctly, and that each signer is a voter of the state of Nebraska and county of Antelope. The post office address of the respective signers are given "Elgin," "Petersburg," and "Oakdale." The argument is that "John Smith, writing merely 'Aurora' after his name, does not give his post office address." The implication is that each signer must give his street and number and his state. Even without the proof upon the back of the petition, it is a fact of which the court will take judicial notice that there are cities and villages of the names appended, in this state; that the free delivery system is not in force in all the cities and villages in the state, and that in such case a street address is unnecessary and unusual. Furthermore, it is a well-known fact that even in cities and towns the usual post office address of many is merely the name of the city without addition. The petition, therefore, is not vulnerable to these objections.

We have no difficulty in reaching the conclusion that the national guard of the state is a part of the state government. The governor of the state is the commander-in-chief, and in times of peace the adjutant general and his assistants are paid a salary by the state, and an office is furnished for them in the state capitol. The statutes provide for the organization and administration of the national guard as the military arm of the state. In times of insurrection or internal disorder it is the instrument by which the executive maintains peace and good order. All

public property belonging to the national guard is required
to be kept in armories or other properly designated places;
appropriations for armories and lockers have been made
for many years, and the legislature of 1913, in the act mak-
ing appropriations "for the current expenses of the state
government" for the biennium ending March 31, 1915, ap-
propriated $68,000, for the Nebraska national guard,
$30,000 of which was for "armory rentals and lockers."

The organized militia may also be considered to be a
"state institution" in one sense. Of course, the words
"state institution" in this connection may have two mean-
ings, one the corporate, or in some instances the associa-
ted, body which carries on the activities for which it is
organized, the other meaning the building or buildings in
which that body exercises its proper functions and activi-
ties. It is in this latter sense that the words "state institu-
tion" are ordinarily used, and a reference to the "State Hos-
pital for the Insane" or "State Industrial School," or like
institutions, is usually understood to mean the building
occupied by the institution as distinguished from the man-
aging body. 4 Words and Phrases, 3662. But the deter-
mination that the national guard is a part of the state
government, and that in one sense it may be termed a
"state institution," does not dispose of the question pre-
sented. The constitution as amended provides: "The ref-
erendum may be ordered upon any act except acts mak-
ing appropriations for the expenses of the state govern-
ment, and state institutions existing at the time such act
is passed." It seems to us that the legislature in submit-
ting the amendment to the constitution providing for the
initiative and referendum, and the people of the state in
adopting the same, intended that the administration of
the state government, and the functions and activities of
existing state institutions, should not be interfered with
or crippled by the uncertainty and delay which would
surely result if appropriations for their expenses should
be submitted to a referendum vote, but that the people of
the state reserved the right to decide whether appropria-
tions for the expenses of new state institutions should be

made. The vague and general rumors as to legislative log-rolling that have been in circulation for years may have had something to do with this determination, but, of course, this we cannot say, and are not concerned with the motive.

The question is a novel one, and is of great importance, since similar inquiries may arise in future with reference to the erection of buildings for the state government or for existing institutions. Our attention has been called to cases in other states where a somewhat similar view has been taken. *McClure v. Nye,* 22 Cal. App. 248, and cases cited; *State v. Commissioners,* 21 Kan. 419. But it is said that in each of these instances the word "expenses" has been prefaced by some adjective such as "current expenses," or "the usual current expenses," or "ordinary expenses," and it it said that by reason of the omission of these qualifying words the legislature and people must have meant that appropriations for expenses of every nature should not be subject to referendum. We are unable to take this view. If immense appropriations should be made for the purpose of erecting buildings at various localities for the state government and for existing state institutions, buildings which might well take years to erect, could it reasonably be said that such appropriations were for the "expenses" of the institutions? Would they not rather be of the nature of permanent investments? Holding these views, therefore, the word "expenses" as used in this section of the constitution must be construed to mean the ordinary running expenses of the state government and existing state institutions, and not to include money to be paid for the erection of new and permanent buildings. We do not wish to be understood as holding that appropriations made for the necessary upkeep, improvement, repair, and maintenance of existing public buildings (such as the appropriation made by the legislature of 1913 for "improvements, repairs, and care of the capitol building") or for minor structures appurtenant thereto made necessary by stress of circumstances, are subject to a referendum. But we are of opinion that

such an act as that under consideration is not within the exception, and that the secretary of state should not be restrained from carrying out the prayer of the referendum petitioners.

The judgment of the district court is

AFFIRMED.

REESE, C. J., and ROSE, J., not sitting.