Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/13/2024 09:07 AM CDT

State of Nebraska ex rel. Latasha Collar,
relator, v. Robert Evnen, Nebraska
Secretary of State, respondent, and
Jenni Benson et al., intervenors.

___ N.W.3d ___

Filed September 13, 2024.    No. S-24-658.

1. **Mandamus.** In an original action before the Nebraska Supreme Court
   seeking issuance of a writ of mandamus, when a verified petition's
   averments are insufficient to support issuance of either an alternative or
   peremptory writ, the petition is properly denied.
2. **Mandamus: Words and Phrases.** Mandamus is a law action and repre-
   sents an extraordinary remedy, not a writ of right.
3. **Mandamus: Proof.** Mandamus is available if the relator can show (1)
   there exists a clear right to the relief sought, (2) the respondent has a
   corresponding clear duty to perform the act requested, and (3) no other
   plain and adequate remedy is available in the ordinary course of the law.
4. **Mandamus.** Whether to grant a writ of mandamus is within the court's
   discretion, and the writ will be issued only when the duty to act is clear.
5. **Constitutional Law: Initiative and Referendum.** The constitutional
   provisions with respect to the right to referendum reserved to the people
   should be construed to make effective the powers reserved.
6. **____: ____.** It is fundamental that the exception in article III, § 3, of
   the Nebraska Constitution should be given strict construction in light
   of the fundamental purpose of the referendum provision to give the
   people the right to vote on specific legislation.
7. **Constitutional Law.** Generally, the exception in article III, § 3, of the
   Nebraska Constitution must be construed to mean the ordinary running
   expenses of the state government and existing institutions, and not
   to include money or appropriations or funds created or acts that have
   as their design a new or different scheme for the revenue raising and
   financing of state delegated and created local units of self-government.

8. ____. The Nebraska Constitution requires a specific appropriation made by law to authorize the expenditure of public funds.
9. **Constitutional Law: Public Officers and Employees.** An appropriation, within the meaning of the Nebraska Constitution, is the setting apart by law of a certain sum from the public revenue for a specified purpose, so that the executive officers are authorized to expend that sum, and no more, for that purpose, and no other.
10. **Constitutional Law.** It is the settled law of Nebraska that there can be no implied appropriation.
11. ____. A promise to make an appropriation is not an appropriation.

Original action. Writ of mandamus denied. Petition dismissed.

Kamron T.M. Hasan, Marnie A. Jensen, and Aubrey L. Wells, of Husch Blackwell, L.L.P., Brenna M. Grasz, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., and Thomas Venzor for relator.

Michael T. Hilgers, Attorney General, Eric J. Hamilton, Zachary A. Viglianco, and Zachary B. Pohlman, for respondent.

Daniel J. Gutman, Sydney L. Hayes, and Alexander S. Arkfeld, of Law Office of Daniel Gutman, L.L.C., and Scott J. Norby, of Norby Welding Hunzeker, L.L.P., for intervenors.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## NATURE OF CASE

In this original action docketed in the Nebraska Supreme Court, Latasha Collar (Relator) seeks issuance of a writ of mandamus directing Robert B. Evnen, Nebraska's Secretary of State, to withhold from the general election ballot the "Private Education Scholarship Partial Referendum." The referendum seeks to repeal 2024 Neb. Laws, L.B. 1402, § 1, passed by the 108th Legislature in 2024, which established a program to provide $10 million in education scholarships to eligible students to pay the costs associated with attending

qualified private elementary and secondary schools. Relator's verified petition for writ of mandamus avers that the Secretary of State has a clear duty to withhold the measure from the 2024 general election ballot because the referendum petition violates article III, § 3, of the Nebraska Constitution and is thus legally insufficient.

Because we conclude that Relator's verified petition fails to show a clear right to performance of the duty sought to be enforced and further fails to show that the Secretary of State has a corresponding clear duty to perform the act requested, we deny issuance of the writ and dismiss the verified petition.

## BACKGROUND

### L.B. 1402

The 108th Legislature passed L.B. 1402 in April 2024. Because the referendum petition at issue here seeks to repeal only § 1 of that act, we summarize only that section.

Section 1 of L.B. 1402 directs the Nebraska State Treasurer to "establish a program to provide education scholarships to eligible students to pay the costs associated with attending a qualified school."[1] It defines "[e]ducation scholarship" to mean "a financial grant-in-aid to be used to pay all or part of the cost to educate an eligible student attending a qualified school."[2] And it defines "[q]ualified school" to mean "any nongovernmental, privately operated elementary or secondary school located in this state"[3] that meets certain statutory criteria.

Section 1 of L.B. 1402 states, among other things, "It is the intent of the Legislature to appropriate ten million dollars from the General Fund for fiscal year 2024-25 and each fiscal year thereafter to the State Treasurer for the purpose of providing education scholarships as provided in this section."[4]

---

[1] 2024 Neb. Laws, L.B. 1402, § 1(3).

[2] *Id.*, § 1(2)(a).

[3] *Id.*, § 1(2)(c).

[4] *Id.*, § 1(7).

And it is undisputed that in a separate appropriations bill, the Legislature made an appropriation of $10 million "from the General Fund . . . to the State Treasurer" for fiscal year 2024-25 and for fiscal year 2025-26 "to aid in carrying out the provisions of Legislative Bill 1402."[5] L.B. 1402 and L.B. 1402A were passed by the Legislature on April 18, 2024, and both were approved by the Governor on April 24.

## REFERENDUM PETITION

On April 30, 2024, sponsors of the "Private Education Scholarship Partial Referendum" filed documentation with the Secretary of State for a referendum petition to be placed on the 2024 general election ballot. The stated object of the referendum petition is to "[r]epeal Section 1 of LB 1402, passed by the 108th Nebraska Legislature in 2024, which directs $10 million dollars [sic] annually for financial grants-in-aid for eligible students to attend a qualifying privately operated elementary or secondary school in Nebraska."

On or about July 17, 2024, the sponsors submitted signatures to the Secretary of State for verification and certification. It is undisputed that after verifying and counting the signatures, the Secretary of State determined the signature requirements were met for the referendum petition to be placed on the 2024 general election ballot. And although the record contains no express determination by the Secretary of State that the referendum has met constitutional and statutory requirements, and no express finding that the referendum petition is valid and sufficient,[6] the parties agree that such

---

[5] 2024 Neb. Laws, L.B. 1402A, § 1.

[6] See, Neb. Rev. Stat. § 32-1409(3) (Cum. Supp. 2022) (upon receipt of referendum petition, "the Secretary of State shall . . . total the valid signatures and determine if constitutional and statutory requirements have been met. . . . If the petition is found to be valid and sufficient, the Secretary of State shall proceed to place the measure on the general election ballot").

determinations and findings are implicit in the Secretary of State's decision to place the measure on the 2024 general election ballot.

### Verified Petition for Writ of Mandamus

On September 5, 2024, Relator filed an application for leave to commence an original action in this court, accompanied by a verified petition for writ of mandamus. Relator's verified petition avers that her daughter currently attends a private high school in Omaha, Nebraska, and that if the referendum petition is placed on the general election ballot, it "could jeopardize the future of Nebraska students, including her daughter or those like her, by eliminating crucial support and funding necessary for their education."

Relator's verified petition alleges the Secretary of State has a "clear duty to withhold legally insufficient and unconstitutional measures from the ballot" and further avers the referendum petition is legally insufficient because it violates article III, § 3, of the Nebraska Constitution.

As we discuss in more detail later in the opinion, article III, § 3, of the Nebraska Constitution provides that the power of referendum "may be invoked, by petition, against any act or part of an act of the Legislature, except those making appropriations for the expense of the state government or a state institution existing at the time of the passage of such act." Relator's verified petition avers that the referendum petition violates article III, § 3, because "Section 1 of LB 1402 appropriates funds for the education of Nebraska students in kindergarten through twelfth grade." Relator's verified petition seeks issuance of a writ of mandamus requiring the Secretary of State to withhold the referendum petition from the 2024 general election ballot or, in the alternative, to "abstain from certifying the election results of the proposed referendum."

Attached to Relator's verified petition are true and correct copies of (1) the sponsors' sworn statement regarding the referendum petition at issue; (2) § 1 of L.B. 1402, as well

as L.B. 1402A; and (3) a press release from the Secretary of State dated August 30, 2024, which states the referendum "will qualify for the general election ballot once verification and certification has been completed."

On September 6, 2024, we granted Relator's motion for leave to commence an original mandamus action in this court, and we ordered expedited service, expedited briefing, and expedited oral argument. In a separate order, also dated September 6, 2024, we directed Relator to show cause why the verified petition for writ of mandamus should not be denied on the ground it is legally insufficient to support such relief.

On September 9, 2024, the referendum sponsors moved for leave to intervene as necessary parties in this action. We granted intervention and ordered expedited briefing.

## ISSUE PRESENTED

[1] In an original action before this court seeking issuance of a writ of mandamus, when a verified petition's averments are insufficient to support issuance of either an alternative or peremptory writ, the petition is properly denied.[7] A verified petition for writ of mandamus having been filed in this court as an original action, and an order to show cause having been entered, the threshold issue is whether the relator has shown that the verified petition is legally sufficient, on its face, to support issuance of either an alternative or peremptory writ.[8]

---

[7] See *State v. Weston*, 67 Neb. 175, 93 N.W. 182 (1903). See, also, *State, ex rel. Funke, v. Lancaster County*, 110 Neb. 635, 194 N.W. 807 (1923) (when allegations of verified petition for writ of mandamus are insufficient to justify issuance of writ in original action before Supreme Court, petition is properly denied). Accord *State ex rel. Tyler v. Douglas Cty. Dist. Ct.*, 254 Neb. 852, 580 N.W.2d 95 (1998) (holding, in original action before Supreme Court seeking writ of mandamus, court may deny issuance of writ and dismiss petition when court's own records show relator has plain and adequate remedy in ordinary course of law).

[8] See *id*.

## LEGAL STANDARDS AND
## PARTIES' ARGUMENTS

[2-4] Mandamus is a law action and represents an extraordinary remedy, not a writ of right.[9] Mandamus is available if the relator can show (1) there exists a clear right to the relief sought, (2) the respondent has a corresponding clear duty to perform the act requested, and (3) no other plain and adequate remedy is available in the ordinary course of the law.[10] Whether to grant a writ of mandamus is within the court's discretion,[11] and the writ will be issued only when the duty to act is clear.[12]

As stated, Relator contends she has a clear right to a writ of mandamus directing the Secretary of State to withhold the referendum petition from the 2024 general election ballot. She argues this is so because Nebraska law imposes on the Secretary of State a nondiscretionary duty to determine the legal sufficiency of ballot measures and to withhold any legally insufficient measure from the ballot,[13] and she contends the referendum petition is legally insufficient because it violates article III, § 3, of the Nebraska Constitution.

The Secretary of State's brief essentially agrees with Relator and argues, "The referendum is invalid because the bill it challenges 'mak[es] appropriations for the expense of the state government'"[14] within the meaning of article III, § 3. The Secretary of State's brief states that although he initially "determined that the referendum met legal sufficiency requirements," he has now changed his mind and "is

---

[9] *State ex rel. Wagner v. Evnen*, 307 Neb. 142, 948 N.W.2d 244 (2020).

[10] *Id.*

[11] *Id.*

[12] See *State ex rel. Tyler, supra* note 7.

[13] See, § 32-1409(3); Neb. Rev. Stat. § 32-1411(2) (Reissue 2016). See, also, *State ex rel. Wagner, supra* note 9, 307 Neb. at 163, 948 N.W.2d at 260.

[14] Brief for respondent at 11.

convinced that the referendum is not legally sufficient."[15] The Secretary of State thus concludes this court should "grant a peremptory writ compelling [him] to remove the Referendum from the ballot."[16]

The intervenors disagree and argue that the writ should not issue for any of several reasons. First, they contend this court lacks subject matter jurisdiction over Relator's verified petition due to a defect in the notarization. We find no such defect and reject this jurisdictional argument.[17] Second, intervenors contend the verified petition fails to state a claim on which the relief of mandamus can be granted, because § 1 of L.B. 1402 makes no appropriation and thus article III, § 3, is not applicable at all. And, finally, intervenors argue that any appropriation arguably made by L.B. 1402 is nevertheless the proper subject of a referendum because it was not an appropriation for the expense of state government.

Before we address the parties' arguments, we pause briefly to address the justiciability of this preelection challenge. Because the outcome of an election is a contingent future event, a challenge that a proposed ballot measure will violate the substantive provisions of the U.S. or Nebraska Constitution does not present a justiciable controversy.[18] It is not ripe for judicial determination because the voters might vote to reject the measure.[19] In contrast, a claim that a proposed ballot measure violates a constitutional or statutory rule that governs the form of the measure or the procedural requirements for its placement on the ballot is a challenge to the legal sufficiency

---

[15] *Id.* at 13.

[16] *Id.* at 22.

[17] See, Neb. Rev. Stat. §§ 64-401 to 64-420 (Cum. Supp. 2022) (authorizing online notarization procedures); Tex. Govt. Code Ann. § 406.101 et seq. (West Cum. Supp. 2023) (same).

[18] *State ex rel. Loontjer v. Gale*, 288 Neb. 973, 853 N.W.2d 494 (2014).

[19] *Id.*

of a ballot measure, and such challenges are ripe for resolution before an election.[20]

This court has previously considered preelection challenges to referendums based on alleged violations of article III, § 3,[21] but our opinions did not discuss whether the exception therein is properly considered a substantive provision or considered a constitutional rule that governs the form of the referendum measure or the procedural requirements for its placement on the ballot. But this original action does not require that we conclusively determine that issue, because, as we explain next, Relator's verified petition conclusively shows that this referendum challenge does not implicate the exception in article III, § 3, at all.

## ANALYSIS

Article III, § 1, of the Nebraska Constitution states that the people "reserve power at their own option to approve or reject at the polls any act, item, section, or part of any act passed by the Legislature, which power shall be called the power of referendum." And article III, § 3, of the Nebraska Constitution governs the power of referendum and provides in relevant part:

> The second power reserved is the referendum which may be invoked, by petition, against any act or part of an act of the Legislature, except those making appropriations for the expense of the state government or a state institution existing at the time of the passage of such act.

[5-7] The constitutional provisions with respect to the right to referendum reserved to the people should be construed to make effective the powers reserved.[22] It is fundamental that the exception in article III, § 3, should be given strict construction in light of the fundamental purpose of the referendum

---

[20] *Id.*

[21] See, *Lawrence v Beermann*, 192 Neb. 507, 222 N.W.2d 809 (1974); *Bartling v. Wait*, 96 Neb. 532, 148 N.W. 507 (1914).

[22] *Lawrence, supra* note 21.

provision to give the people the right to vote on specific legis-lation.[23] Generally, the exception in article III, § 3,

> must be construed to mean the ordinary running expenses
> of the state government and existing institutions, and not
> to include money or appropriations or funds created or
> acts which have as their design a new or different scheme
> for the revenue raising and financing of state delegated
> and created local units of self-government.[24]

The parties appear to disagree about whether an appropria-tion to fund education scholarships to attend private elementary and secondary schools is an appropriation "for the expense of the state government" within the meaning of article III, § 3. But this mandamus proceeding does not require us to answer that question, and we express no opinion in that regard. Instead, we conclude as a matter of law that the portion of the act being referred, § 1 of L.B. 1402, does not make an appro-priation at all.

[8-11] Article III, § 25, of the Nebraska Constitution pro-vides, "No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law . . . ." As such, the Nebraska Constitution requires a specific appropriation made by law to authorize the expenditure of public funds.[25] An appropriation, within the meaning of the Nebraska Constitution, is the setting apart by law of a certain sum from the public revenue for a specified purpose, so that the executive officers are authorized to expend that sum, and no more, for that purpose, and no other.[26] It is the settled law

---

[23] See *id.*

[24] *Id.*, 192 Neb. at 509, 222 N.W.2d at 810 (citing *Bartling, supra* note 21).

[25] See *State v. Moore*, 50 Neb. 88, 69 N.W. 373 (1896).

[26] See *id*. Accord *State ex rel. Creighton Univ. v. Smith*, 217 Neb. 682, 688, 353 N.W.2d 267, 271 (1984) ("[r]egarding appropriation of public funds, to appropriate means to set apart, or assign to a particular person or use in exclusion of others, to use or employ for a particular purpose, or in a particular case").

of Nebraska that there can be no implied appropriation,[27] and this court long ago endorsed the rule that a "'promise to make an appropriation is not an appropriation.'"[28]

Relator invites us to give the exception in article III, § 3, a broad construction and thereby conclude that the exception applies not just to an act or part of an act against which the referendum power is being invoked, but also applies any time the act being referred to has a separate appropriation bill to aid in carrying out its provisions. We must decline this invitation. To do otherwise would be contrary to settled principles that require we strictly construe the exception in article III, § 3, and would frustrate the fundamental purpose of the referendum provision to give the people the right to vote on specific legislation.[29]

Instead, consistent with the plain text of article III, § 3, and principles of strict construction, we hold that the constitutional exception to the referendum power is a narrow one; it prevents a referendum petition from being invoked only "against any act or part of an act by the Legislature . . . making appropriations for the expense of the state government or a state institution existing at the time of the passage of such act."[30] We see no language in § 1 of L.B. 1402 making an appropriation at all.[31]

We specifically reject Relator's suggestion that the provision in § 1(7) should be construed as making an appropriation. Section 1(7) states, "It is the intent of the Legislature

---

[27] *Moore, supra* note 25.

[28] *Id.*, 50 Neb. at 93, 69 N.W. at 374 (quoting *Ristine v. State*, 20 Ind. 328 (1863)).

[29] See, *Lawrence, supra* note 21; *Bartling, supra* note 21.

[30] Neb. Const. art. III, § 3.

[31] See, also, Neb. Rev. Stat. § 49-804 (Reissue 2021) (setting out statutory language and criteria for appropriation to exist); Neb. Rev. Stat. § 49-805 (Reissue 2021) (providing that any legislation not meeting criteria in § 49-804 "shall not be considered a valid appropriation as defined in Article III, section 22, of the Nebraska Constitution").

to appropriate 10 million dollars from the General Fund for
fiscal year 2024-25 and each fiscal year thereafter to the State
Treasurer for the purpose of providing education scholar-
ships as provided in this section." Although this provision
expresses the intent to make an appropriation in the future, it
does not make a specific appropriation within the meaning of
article III, § 3. Instead, as is plainly apparent from the face of
the verified petition and the attachments thereto, it was L.B.
1402A—an act against which the power of referendum has
not been invoked—that contained the necessary language[32]
and made the specific appropriation to carry out the provisions
of L.B. 1402. Moreover, even if § 1(7) of L.B. 1402 could be
construed as an appropriation, it would be an unconstitutional
one, because it expresses the intent to appropriate money not
only for the fiscal year 2024-45, but for "each fiscal year there-
after." It has long been the law in this state that continuing
appropriations of public revenue are prohibited by article III,
§ 22, of the Nebraska Constitution.[33]

## CONCLUSION

The only basis for mandamus relief asserted in Relator's
verified petition is that § 1 of L.B. 1402 makes an appropria-
tion that falls within the referendum exception of article III,
§ 3. Because it is plain from the face of the verified petition
and the attachments thereto that § 1 of L.B. 1402 makes no
appropriation at all, the Secretary of State has no duty to
withhold the referendum based on an alleged violation of
article III, § 3. The averments of the verified petition are
thus insufficient to support issuance of either an alternative
or peremptory writ, because there exists no clear right to the
relief sought and the Secretary of State has no corresponding

---

[32] See § 49-804.

[33] See *State ex rel. Meyer v. Steen*, 183 Neb. 297, 160 N.W.2d 164 (1968).

clear duty to perform the act requested. The petition for writ of mandamus should be and hereby is denied.[34]

WRIT OF MANDAMUS DENIED.
PETITION DISMISSED.

---

[34] See, *State, ex rel. Funke, supra* note 7; *Weston, supra* note 7.

HEAVICAN, C.J., concurring.

I join the court's opinion in full. I write separately to address the recent change in position of the Secretary of State (Secretary) regarding the legal sufficiency of the referendum petition.

Initiative and referendum petitions are initially filed with the Secretary and must include "[a] full and correct copy" of the proposed law or amendment or the measure sought to be referred.[1] Before a petition can be circulated for signatures, the petition's object and text must be filed with the Secretary, who then oversees a process of review by the Revisor of Statutes before preparing the form of the petition for circulation.[2] Signed initiative petitions must be filed with the Secretary 4 months before the general election, and signed referendum petitions must be filed within 90 days after the legislative session.[3] The Secretary must then proceed to determine the validity and sufficiency of the petition's signatures[4] and work with the Attorney General in preparing a ballot title.[5] If the petition is found to be valid and sufficient, the Secretary must then place the petition's contents on the general election ballot.[6]

---

[1] Neb. Rev. Stat. § 32-1403 (Reissue 2016).

[2] See Neb. Rev. Stat. § 32-1405 (Cum. Supp. 2022). See, also, 2024 Neb. Laws, L.B. 287.

[3] See Neb. Rev. Stat. § 32-1407 (Cum. Supp. 2022). See, also, 2024 Neb. Laws, L.B. 287.

[4] See Neb. Rev. Stat. § 32-1409(1) (Cum. Supp. 2022).

[5] See Neb. Rev. Stat. § 32-1410 (Reissue 2016).

[6] See § 32-1409(3) and Neb. Rev. Stat. § 32-1411(2) (Reissue 2016).

The Secretary concedes that he made a determination that the referendum was valid and sufficient and "met legal sufficiency requirements."[7] Once done, I am aware of no process by which the Secretary can change his mind and "rescind his legal sufficiency determination and not place the referendum on the ballot."[8]

Miller-Lerman, J., joins in this concurrence.

---

[7] Brief for respondent at 12.

[8] *Id*. at 13.